ALEXANDER LONG ET AL.

v.

WILLIAM P. LONG ET AL.

1. ADVANCEMENT—DISTINCTION—EVIDENCE.—There is a distinction between an advancement as provided for in the statute and an agreement to take a conveyance *in præsenti* in full satisfaction of all claim in expectancy in the residue of the estate of the ancestor. A bill is maintainable to enforce such an agreement, and parol evidence is admissible to show the agreement. Such agreement is unaffected by the statute of 1872 requiring advancements to be evidenced in writing.

2. EVIDENCE.—Section 2 of Chapter 51 of the R. S. does not apply where the controversy is among heirs respecting their relative rights in the distribution of the estate in proceedings by which the estate itself is in no event to be reduced or impaired.

3. DECLARATIONS OF GRANTOR—ADMISSIBILITY.—Statements of the grantor made in the absence of the grantee after the execution and delivery of the deed, are inadmissible against the grantee but such statements would be proper evidence against the heir of the grantor claiming adversely to the grantee.

APPEAL from the Circuit Court of Lee county. Opinion filed February 20, 1886.

Messrs. W. & W. D. BARGE and Messrs. W. E. IVES & SON, for appellants; cited Galbraith v. McLain, 84 Ill. 379; Bishop v. Davenport, 58 Ill. 105; Deniston v. Hoagland, 67 Ill. 265.

All agreements by expectant heirs in regard to their future contingent estates, when fairly made will be enforced in equity: Parsons v. Ely, 45 Ill. 232; Kenney v. Tucker, 8 Mass. 142; Hobson v. Trevor, 2 Peere Williams, 191; Whethered v. Whethered, 2 Eng. Ch. 184; Lewis v. Madison, 1 Munf. (Va.) 303; Fitch v. Fitch, 8 Pick. 479; Bayler v. Commonwealth, 40 Penn. 37; Vanck v. Edwards, 1 Hoffman, 382; Quarles v. Quarles, 4 Mass. 680.

The declarations of a party to the record are admissible in evidence against him: Ashlock v. Linder, 50 Ill. 159; 1 Greenleaf on Ev., §§ 171, 172; Robbins v. Butler, 24 Ill. 387; C. & N. W. Ry. Co. v. Boon Co., 44 Ill. 240.

Mr. JOHN B. CRABTREE, for appellees; that oral testimony is inadmissible to prove an advancement, cited Barton v. Rice, 22 Pick. 508; In re Ashley, 4 Pick. 21; Bigelow v. Poole, 106 Gray, 104; Sherewood v. Smith, 23 Conn. 516; Wheatherhead v. Field, 26 Vt. 665.

As to declarations: Hatch v. Straight, 3 Conn. 3; Faulkner v. Watts, Atk. 407; Bulkeley v. Noble, 2 Pick. 337.

BAKER, J.    William Long died intestate on the 4th day of July, 1877, leaving certain children and grandchildren as his heirs at law.    William R. Long, one of his sons, was appointed administrator of his estate, and on the 13th day of September, 1880, presented to the County Court of Lee county his amended final report, to which exceptions were filed by William P. Long, a grandson, and one of the heirs of the deceased.    A hearing was had upon said amended report and exception thereto, which resulted in a statement of the accounts of the administrator by the court, and an order and judgment to the effect, among other things, that said administrator, within thirty days from that date, pay to said William P. Long the sum of $5,240 in full of his distributive share of the estate of the deceased.    From this order of the county court the administrator took an appeal to the Circuit Court of Lee county, where the cause is still pending.

Thereupon the appellants, who are children and grand-

children and heirs at law of said William Long, deceased, exhibited their bill of complaint in said circuit court, wherein it was alleged, among other things, that on or about the 3d of June, 1876, and after the death of James Long, son of William Long, and father of William P. Long, said William Long conveyed to William P. Long, his grandson, by warranty deed, certain tracts of land described in the bill and containing 249.46 acres, as his full share of the estate, real and personal, of the grandfather, and in lieu of his expected portion, and that the said deed of conveyance and land were accepted by William P. Long as his full share of the estate, and that it was at the time of the conveyance agreed between the grandfather and grandson, that the residue of the property of the grandfather, both real and personal, should at the time of his death pass to his other heirs free from any claim of William P. Long; and it was alleged that the lands thus conveyed were of the value of about $15,000, and more than the eighth part of the entire estate, and more than the intestate was able to give to each of his other heirs, and that it was therefore agreed that William P. should pay to William Long $4,000 in one, two, three and four years, with interest at eight per cent. in order that William Long might be able to give to each of his other heirs, a share equal to that given his said grandson; and that such notes, and a mortgage on the land to secure them, were executed and delivered, and that William P. took possession of and still holds the premises. The bill then stated at considerable length the proceedings in the matter of the administration of the estate, and made both said William P. Long, and the administrator, William R. Long, defendants, and prayed that the former might be compelled to release all claim to the residue of the estate, that he should be perpetually enjoined from making any claim or prosecuting any suit for any part of said residue, and that he should be compelled to stand to and abide by the agreement between himself and William Long, deceased; and that the latter, as administrator, should be perpetually enjoined from paying said $5,240 or any part thereof, or of the estate, to said William P. Long.

The answer of the defendant William R. Long, administrator, admitted the bill to be true. The answer of the defendant William P. Long admitted the making of the deed of June 3, 1876, but denied that the conveyance of the land was either made or accepted in lieu of his expectant portion of the estate, or that they were worth $15,000. The answer claimed that in 1864 his father, James Long, since deceased, was desirous of purchasing 200 acres of said land, but not being able to pay for it, William Long, father of James, proposed to purchase and pay for the same and take the deed to himself, and afterward convey to James, whenever he became able to buy, and to then let him have it at the same price he paid for it, the rent of the land in the meantime affording him, William, interest on his money invested; and such arrangement also enabling James to secure the land. The two hundred acres were thereupon purchased for $3,600, and deeded to William, who rented them to James. That James was killed on the 26th day of January, 1870, and that William then agreed to carry out with William P. the arrangement made with the father, James, and to convey the land to William P. when he became able to purchase it and for the same price paid for it, and that William P. paid rent for the 200 acres to his grandfather to the time of the conveyance to him in 1876. That early in 1875 William P. was desirous of buying an adjoining tract of 49.46 acres, and his grandfather agreed to purchase it for him and take the deed in his own name, and when the grandson was able to buy to convey it to him at the price paid for it, with ten per cent. interest added; that thereupon it was bought from one Ingalls for $1,000, and deeded February 2, 1875, to William. That William P. settled the interest on the $1,000 to June 3, 1876, and on that date his grandfather conveyed both the 200 acres and the 49.46 to him for the consideration of $4,600, that being the exact price he had paid for the lands, $600 of the consideration being paid in cash, and notes and mortgage being given for the $4,000, which were subsequently paid off.

Replication was filed, and proofs taken; and upon a hearing in the circuit court the bill was dismissed for want of equity.

A preliminary question is raised by appellee, and it is claimed that the court of equity will not take jurisdiction of this case for the reason that the controversy relates wholly to the distribution of personal property, and that the county court had ample power to pass on and determine all the questions involved. On the other hand, it is urged by appellants that the bill is for specific performance of an agreement, and to enforce an equitable estoppel, and that therefore the jurisdiction is properly in the chancery court. Suffice it to say, that we think there was jurisdiction in the county court to settle the present controversy ; but as appellee did not object below to the form or to the maintenance of the bill, but filed his answer and submitted the questions at issue to the court of equity, he can not now, in the appellate court, be heard to raise that point for the first time, as in any view of the case the subject-matter involved is not so wholly foreign to the jurisdiction of a chancery court that the objection that there is an adequate remedy at law may not be waived.

The seventh section of the Statute of Descents, in force July 1, 1872, provides that no gift or grant shall be deemed to have been made in advancement unless so expressed in writing or charged in writing by the intestate, as an advancement, or acknowledged in writing by the child or other descendant. It is urged by appellee that as no writing is produced made by the intestate stating the lands were deeded by way of advancement, or charging them as an advancement, or signed by appellee and acknowledging an advancement, a bill of the character here in question can not be maintained. Parsons v. Ely et al., 45 Ill. 232, Bishop v. Davenport, 58 Id. 105, Galbraith v. McLain, 84 Id. 379, and Kershaw v. Kershaw, 102 Id. 307, are all authorities to show there is a distinction between an advancement as provided for in the statute, and an agreement to take a conveyance *in presenti* in full satisfaction of all claim in expectancy in the residue of the estate of the ancestor, and that a bill of this kind is maintainable, and that parol evidence is admissible, to show the agreement. In Kershaw v. Kershaw it was said : " Here there was no advancement, but an executed contract, whereby an heir released his

expectancy in his father's estate in consideration of a present grant of real estate."

In Galbraith v. McLain it was expressly held such agreement might be shown by oral testimony, and that decision was approved in the Kershaw case. It is suggested the present statute, requiring advancements to be evidenced in writing, was not in force at the time of the transactions involved in the cases cited; but it is sufficient to say the decision in Bishop v. Davenport was made in 1871, and in that case it was said, "The sums received were not charged to the heirs by the intestate, nor can they properly be said to have been received by way of advancement; they were received in full payment and satisfaction of their shares and portions of the estate by express agreement;" and it must be presumed the legislature in employing the word advancement, used it in the sense the Supreme Court had given it when interpreting the former statute on the same subject. Our conclusion on this point therefore is, that a bill of this kind lies as to transactions occurring subsequent to the statute of 1872, and in the absence of written evidence of the contract.

The merits of this suit would seem to depend upon the weight of the evidence; and a number of questions arise upon the record with reference to the admissibility of testimony.

It is claimed by appellants that the appellee is not a competent witness as to the transactions and agreement between his grandfather and himself, and this claim is based upon the alleged ground that appellants sue as heirs, and that he is therefore disqualified by section two of chapter 51, R. S., from testifying in his own behalf as to such matters. The point is not well made, as this is a contest between the heirs, among themselves, regarding the distribution of the estate. The statute relied on was intended to protect the estates of deceased persons from the assaults of strangers, and relates to proceedings wherein the decision sought by the party so testifying would tend to reduce or impair the estate, and does not relate to controversies among heirs respecting their relative rights in the distribution of the estate, in proceedings by which the estate itself is in no event to be reduced or impaired.

Pigg v. Carroll, 89 Ill. 205; Mueller v. Rebhan, 94 Id. 142; Kershaw v. Kershaw, 102 Id. 307. All the heirs, including William P. Long, are competent witnesses.

Appellants also insist that the declarations of William Long concerning the disposition he had made of his property are admissible in evidence. There is no question but that the declarations and admissions of privies in estate made before parting with their interests, are competent evidence against the parties succeeding to their estate. The record, however, contains the testimony of several witnesses who testify to statements of William Long, made in the absence of William P. Long, after the execution and delivery of the deed of June 3, 1876. This evidence is merely hearsay, and is inadmissible; such statements can not be regarded as in any sense declarations against either the proprietary or pecuniary interest of the party making them. We do not understand the case of Cline v. Jones, 111 Ill. 563, to go to the extent of holding that statements of a grantoi in a deed, made after its execution and delivery, are competent evidence against the grantee for the purpose of showing what the consideration for the conveyance was. The declarations that were held to have been properly received were introduced on behalf of the grantee in the deed, and against the objections of those of the heirs who claimed the gift was an advancement.

While the statements of a grantor made after conveyance are inadmissible as aga nst the grantee, they would be proper evidence against the heir of the grantor claiming adversely to the grantee.

The evidence in this case is quite conflicting, and is far from being entirely satisfactory. The testimony of appellee and of his mother, Margaret Long, if it is to be relied upon, would seem to fully establish the matters of defense set up in the answer of appellee. Their statements do not appear to be unreasonable, and they are corroborated by various circumstances in proof. On the other hand they are to some extent impeached by other witnesses, who testify to statements made by them which are in conflict with their sworn evidence. The point apparently most relied upon by appellants is, that

William P. Long, at the date of the conveyance to him, executed and delivered to his grandfather a quitclaim deed to 355.84 acres of other lands. There is no claim that he at the time had any title to, or interest in, any of this land, except a small undivided interest in an eighty-acre tract, the legal title to which had stood in the name of a deceased son of William Long.

It seems the grandfather had furnished the money to purchase this eighty acres, and after the death of his son had always claimed and treated it as his own. The title to the remaining 275.84 acres stood in the name of the grandfather. Appellee is described in this quitclaim deed as "a grandson and heir of William Long." If the transaction between the grandson and grandfather was merely a purchase of land by the former, it is difficult to see why it was that he gave to the latter a quitclaim deed for other lands to which he had no title, and which were already vested in the latter, or why it was that he was described in the quitclaim deed as "a grandson and heir." The only explanation given by appellee in his testimony is that his grandfather had the quitclaim deed drawn up and asked him to sign it, and that he did so; and that nothing was said between them either at that time or before or afterward with reference to it; and that there never was any understanding or agreement that he should receive the lands deeded to him, the grandson, in full of his interest in the estate. The circumstances would seem to suggest a probability that the grandfather supposed the quitclaim deed would have the effect of releasing the expectant interest of appellee either in the lands described in the quitclaim deed or in the whole residue of his estate. But this is mere surmise, and the quitclaim deed could have no such legal effect. These lands described in the quitclaim deed were subsequently conveyed by the grandfather, some of them to various of his children, and some to third parties—and the present controversy is in respect to the distribution of a quite considerable amount of intestate personal property left by the grandfather, and it would be illogical to say that the fact appellee made a quitclaim deed to certain specified tracts of

land, is proof that he released his expectant share of his grandfather's personal property.

The testimony is voluminous, and, as we have said, conflicting; the bill is for the specific performance of an alleged contract, and not only is the burden of proof upon appellants, but they are required to make out their case by a clear preponderance of evidence.

Without going into the details of the testimony, we may say that we have been unable to come to the conclusion that it was error in the circuit court to find the facts for appellee and dismiss the bill of appellants.

The decree is affirmed.

Affirmed.