James G. SMYTH, Collector of Internal Revenue, Appellant,

v.

Mazie ERICKSON, Executrix of the Last Will and Testament of Timothy H. Carlon, Deceased, Appellee.

No. 13691.

United States Court of Appeals, Ninth Circuit.

April 7, 1955.

Rehearing Denied May 20, 1955.

H. Brian Holland, Asst. Atty. Gen., Carolyn R. Just, Ellis N. Slack, Robert N. Anderson, Walter Akerman, Jr., Sp. Assts. to Atty. Gen., Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for petitioner.

J. Warren Manuel, Oakland, Cal., for respondent.

Before DENMAN, Chief Judge, POPE, Circuit Judge, and BYRNE, District Judge.

BYRNE, District Judge.

On October 10, 1938, Timothy H. Carlon was adjudged incompetent by the Superior Court of the State of California in and for the County of Merced, and W. J. Ferrell was appointed guardian of his estate; thereafter, Carlon's daughter, Mazie Tangerman (later Mazie Erickson, the appellee), became dissatisfied with Ferrell's management of her father's estate, and on April 10, 1941, entered into a written contract under the terms of which she employed certain attorneys to represent "her interest in all proceedings pertaining to or arising out of the guardianship of Timothy H. Carlon, an incompetent person, and hereafter (sic) and in all matters, contests, actions and proceedings in probate that shall arise upon the death of said incompetent". Mazie

agreed to pay the attorneys 25% of all moneys or property to which she might become entitled from the estate of her father as compensation for their services in the "protection, safeguarding and procurement" of her share in her father's estate.[1] Any fees which might be allowed the attorneys by the court in the guardianship matter were not to be deducted from the 25% contingent fee.

As a result of litigation in which Mazie's attorneys participated, Ferrell was forced to resign. On March 12, 1942, Mazie and one V. G. Preston were appointed co-guardians, and thereafter her attorneys were employed as attorneys for the guardianship estate. Carlon died May 10, 1943 leaving an estate which was appraised at $407,270.94 for estate tax purposes. Under the terms of a will prepared by Mazie's attorneys subsequent to the execution of the contract, she was made the sole legatee of the decedent and was appointed executrix. During the pendency of the probate proceedings, Mazie settled her indebtedness to her attorneys by the payment of $75,-000.00 in lieu of the 25% of her inheritance. She paid this amount from the assets of the estate of the decedent, and upon applying for a decree of final distribution, waived an accounting of her administration and her fee as executrix. No claim with respect to the $75,000.00 payment was ever filed in either the guardianship or probate proceedings.

On April 27, 1945, Mazie, as executrix of decedent's estate, filed an estate tax return and paid the tax therein disclosed. Statutory and extraordinary attorney fees in the amount of $5616.09 were listed as a deduction in the return, but no deduction was claimed with respect to the $75,000.00. Three years later a claim for refund was filed by the executrix based on her contention that the $75,000.00 should have been deducted pursuant to 26 U.S.C.A. § 812(b) in determining the net taxable estate. The claim was re-

1. She also agreed to pay one of the attorneys, Lafayette Smallpage, an additional $5000.00 (also a contingent fee payable out of her inheritance) for serv-

ices rendered prior to the contract. Any sums allowed Smallpage by the court in the guardianship proceedings were to apply as a credit against this $5000.00.

jected by the Commissioner of Internal Revenue and this action was commenced in the District Court.

■ The question presented is whether the District Court erred in holding that the decedent's estate was entitled to an estate tax deduction under section 812 (b) (3), of the Internal Revenue Code of 1939, 26 U.S.C.A. § 812(b) (3). Under this section, such claims against the estate of a decedent are deductible in determining the net taxable estate "as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered." The use of the term "allowed" in section 812(b) (3) is not to be construed as meaning that unless a claim against the estate has been allowed by the state court no deduction therefor will be permitted. Deductibility is not conditioned on a claim's allowance by a local court, but rather upon its enforceability under local law. Buck v. Helvering, 9 Cir., 73 F.2d 760; Commissioner of Internal Revenue v. Strauss, 7 Cir., 77 F.2d 401. Since the estate of the decedent was administered in the State of California, deductibility of the $75,000.00 depends upon whether a claim by Mazie for remuneration on account of the $75,-000.00 payment to her attorneys would have been enforceable against the estate under California law.

■ The District Court held that the services rendered by Mazie's attorneys were beneficial to the guardianship estate in that they contributed to the removal of W. J. Ferrell as guardian; that Mazie's obligation to pay her attorneys was a charge on the estate of the decedent, and the assets of said estate came into the hands of the executrix charged with such obligation.

The record discloses that shortly after the appointment of Mazie and her co-guardian, they filed a "Petition for Allowance upon Fees of Guardians and their Attorneys" in which were related the services performed by the attorneys, including the services performed prior to their appointment as counsel for the guardians. Specific reference was made to the services which resulted in the resignation of the former guardian, and the petition included an allegation that the attorneys "have not been paid for their services, and your Guardians, believing that the estate has been benefited thereby, request that such sum be allowed them as the Court may deem reasonable." The guardianship court made a finding that the reasonable value of the services which were of value to the guardianship estate and rendered by the attorneys *prior* to their appointment as counsel for the estate, was $5,000.00. The court further found that the reasonable value of services rendered subsequent to their appointment as counsel was $7500.00. An order was made allowing the $7500.00 to the attorneys for the guardians, and the $5,-000.00 to Lafayette Smallpage, one of the attorneys for the guardians. Approximately one year later the guardians filed their final report setting forth in detail the services performed for the estate by counsel since the previous petition and requested allowance of reasonable attorney fees. The court allowed counsel "in full for their services in said Estate the additional sum of $7500.00."

The appellant contends that the petitions for fees filed in the guardianship estate and the court's orders thereon clearly show that to the extent that the removal of the guardian Ferrell benefited the estate, such service, as well as all other services beneficial to the estate rendered by the attorneys, was fully compensated in the amount determined by the court to be the reasonable value thereof. We agree, and add that the state court having determined the reasonable value of the services rendered the guardianship estate to be $20,000.00, and having allowed payment in that amount, a claim for an additional $75,000.00, or any other amount, would not have been enforceable against the estate.

The appellee's argument seems to suggest that there were services rendered under the contingent fee contract that were beneficial to the estate and not compensated for in the guardianship pro-

ceedings, but she does not specify any such services other than those which contributed to the removal of the guardian Ferrell. As pointed out above, the first petition for attorney fees in the guardianship estate requested an allowance for services which resulted in the resignation of the former guardian Ferrell and an allowance was made for the reasonable value of such services.

■■ Even if we were to assume that the $75,000.00 attorney fee paid by Mazie was for services beneficial to the guardianship estate, and further assume that such services were not considered by the court when it allowed fees in an amount that it determined to be the reasonable value of all services rendered the estate, a claim by Mazie for her reimbursement would not be enforceable against the estate. Under California law, liability is imposed on an estate for the reasonable value of legal services rendered to conserve the estate, *provided, that at the time the services were rendered, it be intended that remuneration be made from the estate.* In re Guardianship of Jacobson, 30 Cal.2d 312, 182 P.2d 537; In re Guardianship of Garbini, 28 Cal.App.2d 715, 83 P.2d 508; In re Estate and Guardianship of Giambastiani, 1 Cal.App. 2d 639, 37 P.2d 142. The question is one of intention. If, at the time the services were originally rendered, they were intended to be gratuitous, and were tendered without any expectation of remuneration, they cannot later be converted into a pecuniary demand. Newbert v. McCarthy, 190 Cal. 723, 214 P. 442. The trial court made a finding that Mazie incurred liability for the attorney fees with the intention and expectation on her part that she would be reimbursed therefor from the guardianship estate. Under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the findings of the trial court must be sustained unless clearly erroneous. Where, however, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed, the finding is clearly erroneous and must be set aside. United States v. United States Gypsum Co., 333 U. S. 364, 68 S.Ct. 525, 92 L.Ed. 746.

■ The very nature of the contingent fee contract, the circumstances under which it was made, and Mazie's actions during the administration of both estates completely belie any intention on her part to look to the estate of her incompetent father to remunerate her for any advantages which might redound to the benefit of the estate as a result of the contract. The purpose of the contract was stated to be for "the protection, safeguarding and procurement of * * * (Mazie's) share in said estate". It specifically provided that the contingent fee for which Mazie was personally liable *was in addition to compensation the attorneys might receive for services to the estate.*[2] The contingency of the fee was such that the *right to payment could arise only if and when the estate funds became Mazie's personal funds.*

There are other significant indications which support the irrefutable conclusion that neither at the time of the execution of the contract, at the time the services were rendered, nor at the time she paid the $75,000.00, did Mazie have any intention or expectation that she would be remunerated therefor from the guardianship estate. Among these is the fact that she did not inform the court of any such services or of her contractual obligation to pay fees when as guardian she filed two reports and petitions for attorney fees; she did not inform the court of any such services when, following the first report, the court allowed attorney fees in an amount it deemed to be the reasonable value of all services rendered the estate both before and after the removal of the former guardian; she did not in-

2. "It is expressly understood, however, that such ordinary fees as may be allowed by the court to the parties of the first part for services hereafter performed in the guardianship matter, shall not be considered as a deduction, or be deducted from the amount representing the foregoing agreed percentage basis of compensation."

form the guardianship court of any such services when, following the final report, it made an allowance to the attorneys *"in full for their services"* in an amount it deemed to be the reasonable value of all uncompensated services rendered the estate.

The District Court erred in holding that the obligation incurred by Mazie to pay attorney fees was a charge upon the estate of Timothy H. Carlon, deceased, and that the $75,000.00 was an allowable deduction within the provision of section 812(b) (3) of the Internal Revenue Code. The judgment is reversed.