Blanche GREENE, Executrix of the Estate of Arthur Greene, Deceased, Plaintiff,

v.

The UNITED STATES of America, Defendant.

No. 75 C 4076.

United States District Court, N. D. Illinois, E. D.

March 21, 1978.

Franklin H. Chanen, David Shayne, Henry L. Mason III, Kathryn Korn, Sidley & Austin, Chicago, Ill., for plaintiff.

Myron C. Baum, Acting Asst. Atty. Gen., Jerome Fink and James W. Littlefield, Attys., Dept. of Justice, Washington, D. C., Samuel K. Skinner, U. S. Atty., N. D. Ill., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

Plaintiff, executrix of the estate of Arthur Greene, deceased, brings this action,

pursuant to 26 U.S.C. § 7422 against the United States, for refund of $173,575.55 in estate taxes paid, plus interest from the date of overpayment. Before us at this time is plaintiff's motion for summary judgment, supported by affidavits and financial documents. The United States has responded to the motion and also moved to strike three of the affidavits on the ground that they are inadmissible under Illinois state law. Our jurisdiction is founded upon 28 U.S.C. § 1346(a). For the reasons herein stated, we deny defendant's motion to strike, and grant in part and deny in part plaintiff's motion for summary judgment.

I.

Arthur Greene died testate on January 7, 1969, and his will was admitted to probate and letters testamentary were issued by the Probate Division of the Circuit Court of Cook County on January 28, 1969. On May 23, 1969, plaintiff filed an inventory of the estate, which was approved by the court on that day, but she alleges that the Clerk of the Court failed to note the filing on the court's docket. The inventory noted no real estate and fourteen items of personal property.

On April 19, 1972, the probate court, on its own motion, ordered plaintiff to present an inventory which was filed and approved on May 3, 1972. The new inventory included certain of the original inventory items and added an additional $74,828 of assets. The notice which accompanied the filing of the new inventory stated that

an inventory of estate not previously inventoried has been filed in the above proceeding. Claims may be filed against the estate of Arthur Greene, deceased, on or before the First Monday in the month of July, 1972. All claims not filed on or before that date are forever barred as to the estate listed in such inventory.

On June 5, 1972, claims were formally filed with respect to debts owed by the deceased to Blanche Greene, his wife, Jane Michel, his daughter, and D. Daniel Michel, his son-in-law, in an aggregate amount of $428,577.87.[1] The claims of the Michels were allowed by the court on August 14, 1972. Each of the orders contained the following direction:

It is further ordered that this claim is to be paid from assets not previously inventoried within seven months from the issuance of letters testamentary and are [sic] to be paid only from other assets of the estate.

Due to the fact that Blanche Greene was Executrix, the court appointed a special executor to contest her claim. That claim was allowed on October 16, 1972 with the same direction as to source of payment as the others.

On September 11, 1972, upon petition of Blanche Greene, the probate court found that the May 23, 1969 inventory did not comply with the Illinois Probate Act with the result that "creditors of the estate may have been materially misled." The court declared that the 1969 inventory was "of no force and effect and that the items listed therein were not inventoried by said document within the meaning of Section 204 of the Probate Act." The May 3, 1972 inventory was declared to be the true and sole inventory of the estate.

Following the filing of estate tax returns by plaintiff, including a payment of $38,500, the Internal Revenue Service disallowed deductions of the debts plus interest allegedly owed and paid to plaintiff and the Michels. The Service also recomputed the marital and charitable deductions, reducing the estate by the amount of federal estate tax due prior to computing the deductions. The Service assessed deficiencies against the estate in the amount of $146,663.96 plus interest of $32,159.59. The total amount of $178,823.55 was paid on December 13, 1973. After an unsuccessful claim for refund via administrative channels, this action was filed.

1. Although the claims were not filed until 1972, the loans were apparently repaid out of estate assets on various dates between September, 1969 and March, 1971, $150,000 to D. Daniel Michel, $154,827.87 to Jane Michel, and $123,750 to Blanche Greene. Interest payments were also made.

Plaintiff now moves for summary judgment on her action for refund, based on her affidavit and those by the Michels attesting to the validity of the debts and the probate court action approving their payment. Defendant has asserted various defenses to the motion and in addition has moved to strike the affidavits on the ground that they are inadmissible under the Illinois Deadman's Act, Ill.Rev.Stat. ch. 51, § 2, and do not otherwise comply with Fed.R.Civ.P. 56(e).

## II.

26 U.S.C. § 2053(a)(3) provides for the deductibility of claims against an estate which are "allowable by the laws of the jurisdiction" under which the estate is being administered. Regulation 20.2053–1(b)(2) provides that

The decision of a local court as to the amount and allowability under local law of a claim or administrative expense will ordinarily be accepted if the court passes upon the facts upon which deductibility depends. If the court does not pass upon those facts, its decree will of course, not be followed. For example, if the question before the court is whether a claim should be allowed, the decree allowing it will ordinarily be accepted as establishing the validity and amount of the claim. However, the decree will not necessarily be accepted even though it purports to decide the facts upon which deductibility depends. It must appear that the court actually passed upon the merits of the claim. This will be presumed in all cases of an active and genuine contest. If the result reached appears unreasonable, this is some evidence that there was not such a contest, but it may be rebutted by proof to the contrary. If the decree was rendered by consent, it will be accepted, provided the consent was a bona fide recognition of the validity of the claim (and not a mere cloak for a gift) and was accepted by the court as satisfactory evidence upon the merits. It will be presumed that the consent was of this character, and was so accepted, if given by all parties having an interest adverse to the claimant. The decree will not be accepted if at variance with the law of the state. . . ."

Regulation 20.2053–4 further requires that "only claims enforceable against the decedent's estate may be deducted." Thus, an unenforceable claim which is nevertheless allowed by the state court may not be deducted.

In order to determine the deductibility of the instant obligations, we must find the answers to a series of questions. The first, and the one to which defendant's motion to strike is directed, is whether the debts were valid obligations of the decedent regardless of their later collection. Assuming that the debts were valid, we must then determine if the claims were enforceable at the time of decedent's death, and, if so, the relevance of the fact that they were not filed until well after the cut-off date for claims against the assets inventoried in 1969. If, as plaintiff argues, the deductibility of debts is determined at the time of death irrespective of subsequent events, we need not proceed further. If, however, we must look at the status of the claims at time of formal filing, we must determine whether the claims may only be deducted from the $74,828 in new assets listed in the 1972 inventory and from which the probate court ordered payment, or whether the subsequent order of that court declaring the first inventory invalid and declaring the 1972 document the sole and true inventory permits the claims to be allowable, and therefore deductible from the whole estate. We reach each question in turn.

### A. *Validity of the Obligations*

Defendant alleges as its first defense to the motion for summary judgment that the burden of proof as to the validity of the obligations has not been met. In support of this claim, defendant charges that the affidavits of Mrs. Greene and the Michels are inadmissible pursuant to the provisions of the Illinois Deadman's Act, Ill.Rev.Stat. ch. 51, § 2, and pursuant to Fed.R.Civ.P. 56(e), and that, in any event, all but the last of

Greene's loans and the unpaid balance of the first two of Jane Michel's loans would be barred by the applicable statute of limitations. Each of the affidavits in question contains a sworn statement of the value of the loan, payments made on interest and principal by Arthur Greene or his estate, and copies of the affiant's and/or decedent's records.

Ill.Rev.Stat. ch. 51, § 2, provides in relevant part:

In the trial of any civil action in which any party sues or defends as the representative of a deceased or incompetent person, no adverse party or person directly interested in the action shall be allowed to testify on his own behalf to any conversation with the deceased or incompetent person or to any event which took place in the presence of the deceased or incompetent person, except in the following instances: . . .

We first note that the Seventh Circuit has stated that "there is a serious question whether the Illinois Dead Man's Statute would be applicable in a federal refund suit." *Patrick v. United States*, 524 F.2d 1109, 1117–18 (7th Cir. 1975). Assuming, however, that defendant is correct in its invocation of Fed.R. of Evidence 601 under which the capacity of witnesses is determined by reference to state law, and, although the instant action is a civil proceeding in which the decedent's representative is suing in that capacity, we find that the Illinois Deadman's Statute is inapplicable to the affidavits.

■ The purpose of the statute is "to protect the estates of deceased persons and the interests of parties suing or defending as executor, administrator, heir, legatee, or devisee, against the possibility of false testimony and fraudulent claims by survivors." 6 *Callaghan's Illinois Evidence* § 12.02 at 4–5 (1964). The Illinois cases are clear that the statute is not intended to exclude testimony which would augment the estate. 6 *Callaghan's, supra*, at 6; *Seaton v. Lee*, 221 Ill. 282, 77 N.E. 446 (1906); *see also Conti-*

*nental Casualty Co. v. Maxwell*, 127 Ill.App. 19, 22 (1907). An action is similarly without the statute where it does not impair the estate of the decedent. *See* 6 *Callaghan's, supra*, § 12.08 at 15. *See also Alward v. Woodward*, 315 Ill. 150, 146 N.E. 154 (1924); *Laurence v. Laurence*, 164 Ill. 367, 45 N.E. 1071 (1896); *Kalschinski v. Illinois Bankers Life Assurance Co.*, 311 Ill.App. 181, 35 N.E.2d 705 (1941); *Rosengren v. Manufacturer's National Bank*, 220 Ill.App. 608 (1921); *Long v. Long*, 19 Ill.App. 383 (1886), *aff'd*, 118 Ill. 638, 9 N.E. 247 (1886). Whatever the admissibility of affiants' statements in a probate proceeding, their entrance into evidence here can only benefit the estate, and we see no justification for invoking the statutory exclusion.

■ Defendant next moves that the affidavits be stricken on the ground that they fail to meet the criteria of Fed.R.Civ.P. 56(e) in that the affidavits set forth facts inadmissible in evidence and that the documents attached are unauthenticated and the affiants not persons through whom such documents could be admitted into evidence. The latter argument is dependent upon affiants' asserted incapacity under the Deadman's Statute to testify to the authenticity of the documents and may, therefore, be disregarded. With respect to the first argument, defendant contends that the statement that the decedent made a loan is a legal conclusion ineffectual in a motion for summary judgment. We see nothing conclusory in the use of the verb "loaned" when read in connection with affiants' statements of money given to decedent and dates of payment of principal and interest. Defendant has not supported its argument beyond its own conclusory allegations and we deny the motion to strike.

■ In support of the validity of the loans, we have the state court orders allowing them as claims upon the estate and affiants' sworn statements that the loans were made. Additionally, we have before us the sworn answers to interrogatories prepared by plaintiff's attorneys,[2] and the

---

2. Fed.R.Civ.P. 56(c) provides that answers to interrogatories may be considered in connec-

tion with motions for summary judgment. From a technical standpoint, however, the an-

deposition of Diane Rowen, decedent's office manager and bookkeeper, who testified to the records kept by decedent and authenticated the records and handwriting on exhibits attached to the answers to interrogatories and the affidavits. Defendant has filed no documents in opposition to those filed in support of the existence and validity of the obligations and we find that no genuine issue exists as to any material fact. We therefore find that the obligations did indeed exist.

### B. Enforceability of the Obligations

Having found that the obligations were valid, we must next determine whether they were enforceable at the time of Arthur Greene's death. Defendant argues in opposition to the motion for summary judgment that all but the last of Blanche Greene's loans and the unpaid balance of the first two of Jane Michel's loans were barred by the applicable statute of limitations and therefore not "allowable" under 26 U.S.C. § 2053(a). Plaintiff disputes defendant's selection of the applicable time period, asserting that the ten year period applicable to promissory notes, Ill.Rev.Stat. ch. 83, § 17, rather than the five year limit for enforcement of oral contracts, Ill.Rev. Stat. ch. 83, § 16, should be invoked. Defendant acknowledges the existence of the promissory notes but states that they were never "delivered" and are therefore ineffective. Defendant supports this assertion by reference to a pre-Uniform Commercial Code Illinois case.

■ Without deciding, however, whether the documents come within the technical category of "promissory notes," we think it clear that they fall within the category of "other evidences of indebtedness in writing" listed within the ten year limitations period of Ill.Rev.Stat. ch. 83, § 17. *Estate of Garrett v. Garrett,* 24 Ill.App.3d 895, 322 N.E.2d 213 (1975). We therefore find the ten year period applicable in determining the enforceability of loans outstanding at the time of decedent's death.

Defendant next contends that, even assuming that the ten year time limit is applicable, $60,000 of the $123,750 owed to Blanche Greene, and $70,000 of the $154,827.87 owed to Jane Michel are barred by the statute. There is apparently no question that the $150,000 owed to D. Daniel Michel is not barred by the statute and was therefore enforceable at decedent's death.

According to the affidavits, Blanche Greene made loans to decedent as follows:

| | |
|---|---:|
| February 15, 1955 | $ 30,000 |
| September 9, 1955 | 30,000 |
| May 31, 1960 | 20,000 |
| May 31, 1960 | 40,000 |
| December 29, 1965 | 30,000 |
| | $150,000 |

The following payments were made to her by Arthur Greene during his lifetime:

| | |
|---|---:|
| March 20, 1961 | $ 20,000 |
| July 11, 1966 | 6,250 |

Jane Michel made the following loans:

| | |
|---|---:|
| February 10, 1958 | $100,000 |
| August 14, 1958 | 50,000 |
| May 30, 1960 | 65,000 |
| January 5, 1961 | 20,000 |
| May 1, 1961 | 21,000 |
| May 18, 1961 | 5,000 |
| June 7, 1961 | 20,000 |
| June 7, 1961 | 5,000 |
| June 3, 1963 | 50,000 |
| | $336,000 |

---

swers do not comply with Fed.R.Civ.P. 33 in that they were signed and verified by plaintiff's attorney rather than plaintiff. Realistically, however, it is well known that the common practice is for the attorneys to prepare the answers and have the party swear to them. It has also been suggested that "[i]f the attorney does answer the interrogatories in his own name, the answers would bind the party on the same principle by which a party is bound by admissions or stipulations entered into by his attorney." 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2172 n. 29 (1970). In addition, plaintiff's sworn affidavit incorporates the answers to the interrogatories served on her and therefore serves the same purpose as her signing the answers. Finally, defendant has not moved to strike the answers and, inasmuch as the answers were served months prior to these motions without objection to form, we would consider any defect to be waived.

The following payments were made to her by Arthur Greene during his lifetime:

| | |
|---|---:|
| December 2, 1959 | $ 80,000 |
| June 13, 1960 | 2,000 |
| December 27, 1960 | 7,172.13 |
| February 10, 1961 | 2,000 |
| July 12, 1961 | 10,000 |
| June 4, 1963 | 50,000 |
| December 30, 1966 | 10,000 |
| April 13, 1967 | 10,000 |
| September 19, 1967 | 5,000 |
| December 28, 1967 | 5,000 |
| | $181,172.13 |

Although defendant has not offered any explanation for its selection of figures barred by the statute of limitations, it apparently is contending that the two $30,000 loans made in 1955 by Blanche Greene and the $100,000 and $50,000 loans made in 1958 by Jane Michel, minus the $80,000 paid by Arthur Greene in 1959, are barred by the ten year period.

■ The rule with respect to the application of payments to a series of debts has been set out in a number of Illinois cases:

Where a debtor makes a payment to his creditor, to whom he is indebted on several accounts, he has the right to indicate upon which item the payment shall apply. If he does not do so, the creditor may ordinarily select the item and if no selection is indicated by either, the law will apply the payment as may seem reasonable and just. And in such cases the application will ordinarily be made upon the item first due.

\* \* \* \* \* \*

There are a number of cases in Illinois which hold that where the debtor makes no direction as to the application of a payment, to a creditor holding various claims, and no application is made by the creditor, the law will apply the payment most advantageously to the creditor. . . It is also the law in Illinois that the general rules regarding the appropriation of payments will not be applied when, from the circumstances surrounding the case, it appears that the application of such rules would work an injustice. *Village of Winfield v. Reliance Insurance Company*, 64 Ill.App.2d 253, 212 N.E.2d 10, 12 (1965).

Neither side has presented any evidence as to the intent of the parties with respect to the payments except for plaintiff's contention that Arthur Greene's notation "on account" next to his entry of certain payments demonstrates an intention to apply the payment to all the outstanding loans. We do not find this sufficient to indicate intent and we deny the motion for summary judgment on this question. We note, however, that if, after hearing, plaintiff is able to prove either an intention to apply payments to the earlier loans, or if no evidence is produced on this question, we will apply the later payments to the earliest debts to determine what loans are within the statute of limitations and were therefore enforceable at the time of death. Since Blanche Greene was only repaid $26,250 during the lifetime of decedent, $33,750 ($60,000 minus $26,250) will in any event be barred because of the ten year statute of limitations. Jane Michel was repaid more than the $150,000 in principal loaned prior to ten years before Arthur Greene's death, and the entire remaining amount of the loans would therefore be enforceable.

If, on the other hand, defendant is able to prove that payments were intended to be made on certain of the later loans, then the statute of limitations would bar the loans made in 1955 and 1958.

C. *Time for Filing Claims*

Having found that at least some of the loans made to decedent were enforceable, we must next determine the relevance, if any, of the fact that claims on the debts were not filed until long after the close of the original claims period. In support of her motion for summary judgment, plaintiff cites the case of *Russell v. United States*, 260 F.Supp. 493 (N.D.Ill.1966). In *Russell*, claims against the estate were perfected beyond the state claims limitations period, but were nevertheless allowed by the probate court. The IRS denied the estate's deductions. In determining the identical issue now before us, Judge Hoffman found, 260 F.Supp. at 499:

The claims of Patrick and Mary were not enforceable under state law at the time they were filed with the probate court. This fact makes necessary an interpretation of the language of § 2053 providing for deductions from the gross estate of such claims against the estate "as are allowable by the laws of the jurisdiction * * under which the estate is being administered." The persuasive weight of the case law is to the effect that this language must be read to refer to such claims "as are allowable [at the time of the decedent's death] under the laws of the jurisdiction where the estate is being administered." *Commissioner of Int. Rev. v. Strauss,* 77 F.2d 401 (7th Cir. 1935); *Smyth v. Erickson,* 221 F.2d 1 (9th Cir. 1955); *Winer v. United States,* 153 F.Supp. 941 (S.D.N.Y.1957). See also *Ithaca Trust Co. v. United States,* 279 U.S. 151, [49 S.Ct. 291, 73 L.Ed. 647] . . (1929). In that case, involving another statute, the Supreme Court, in an opinion by Justice Holmes, held that an estate tax is a tax on the act of the decedent and not on the receipt of property by legatees, and that the estate transferred must be valued at the date of death. Justice Holmes wrote:

"The question is whether the amount of the diminution, that is, the length of the postponement, is to be determined by the event as it turned out, * * * or * * * as they stood on the day when the testator died. * * * The estate so far as may be is settled as of the day of the testator's death."

The Court there made a pronouncement about the nature of an estate tax, and it held that the estate must be considered as settled as of the date of the decedent's death, and not as effected by subsequent events; that is, the taxpayer cannot be compelled to pay taxes on amounts which fall into an estate by reason of events subsequent to the date of death.

The relevant inquiry, therefore, is whether the claims of Patrick and Mary were allowable in the State of Illinois on January 9, 1960, the date of the death of Lillian Russell. That the claims were subsequently lost by lapse of time is irrelevant.

Defendant attacks the reasoning in *Russell,* and Judge Hoffman's interpretation of *Ithaca Trust.* Although it has cited no contrary case directly on point, we note that in the recent decision in *Jones v. United States,* 424 F.Supp. 236 (E.D.Ill.1976), Judge Wise found that a claim allowed by the probate court, but one to which the executor could have interposed an objection based on the statute of limitations, was not deductible under § 2053(a). Judge Wise did not discuss, however, the distinction between enforceability at time of death and at time of filing the claim, and did not cite or distinguish *Russell* or *Ithaca Trust.*

The issue posed by *Russell* and the cases cited therein has been the topic of a number of commentaries. *See, e. g.,* Note, "The Estate Tax Deductibility of Unenforced Claims Against a Decedent's Estate," 11 *Gonzaga L.Rev.* 707 (1976); Note, "Federal Estate Taxation: Recent Developments in the Deductibility of Claims Against the Decedent's Estate and Their Effect in Illinois," 52 *Chi.-Kent L.Rev.* 664 (1976); Note, "Estate and Income Tax: Claims Against the Estate and Events Subsequent to Date of Death," 22 *U.C.L.A.L.Rev.* 654 (1975); Note, "Income and Estate Taxes—Claims Against the Decedent's Estate," 10 *Wake Forest L.Rev.* 328 (1974); Comment, "Effect of Events Subsequent to the Decedent's Death on the Valuation of Claims Against His Estate Under Section 2053 of the Federal Estate Tax," 1972 *Ill.L.Forum* 770. The commentators indicate that two lines of cases have arisen: one, including *Russell* and *Winer v. United States,* cited *supra,* applying *Ithaca Trust* to stale claims and finding that deductibility turns on enforceability at time of death; the other, following the case of *Jacobs v. Commissioner,* 34 F.2d 233, 235 (8th Cir. 1929), decided the same year as *Ithaca Trust,* and which stated:

Tax laws deal with actualities, and the rules prescribed by Congress are intended to produce practical results, when applied by untechnical men. We think actuality

was the thought foremost in the mind of Congress when it put the phrase "claims against the estate" in this and other Revenue Acts. The "claims" which Congress intended to be deducted were actual claims, not theoretical ones. Indeed, a claim without a claimant is a sort of legal figment, which has the tendency to produce intellectual dizziness, comparable to that felt when gazing down into running water from an insecure footing. . . . If an executor or administrator leaves his statutory fees in the estate, can it be said that they should nevertheless be deducted in determining this tax? If a father or mother, holding an obligation of a deceased child, refuses to demand payment from his or her estate, would the obligation nevertheless be a claim against the estate to be deducted in determining this tax?

In our opinion a claim without a claimant was not in the mind or purpose of Congress when the words "claims against the estate" were written into the revenue statutes. The administration of an estate necessarily extends over a period of months, sometimes of years, and always under state laws requiring the orderly presentation and allowance of claims against it. It was, in our opinion, claims presented and allowed or otherwise determined as valid against the estate and actually paid or to be paid that Congress had in mind, when it provided for the deduction from the gross estate of "claims against the estate" in determining the value of the net estate for taxing purposes.

See also *Estate of Frank G. Hagmann*, 60 T.C. 465 (1973), *aff'd*, 492 F.2d 796 (5th Cir. 1974).[3]

Whatever the merits of these conflicting lines of argument, in both the cases and the commentaries, it is apparent that the issue has not been resolved. It has also been noted that "[w]hen it is to the Service's advantage, however, it has not been loathe to employ the principle that deductible claims against the estate become fixed at death." 11 *Gonzaga L.Rev.*, *supra*, at 712, *citing Estate of Donald E. Lester, Sr.*, 57 T.C. 503 (1972).

We have no desire to attempt to formulate a hard and fast rule for a matter which is so readily susceptible to and so obviously yearning for legislative clarification. We do note, however, some general principles. The estate tax is a tax imposed on the right to transfer property at death, measured by the property so transferred. *See Knowlton v. Moore*, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969 (1900). The decedent transfers his obligations along with his assets and, as a matter of fairness as well as administrative convenience, the determination whether an obligation exists in the estate should be made at the time of death.[4] Moreover, we see little to commend a policy which encourages nonpayment of debts and penalizes an estate which honors the decedent's obligations. We think that in the instant situation, where we have found at least some of the debts to have been valid and enforceable at the time of decedent's death, where payments were in fact made by the estate within a reasonable time after the decedent's death, although concededly subsequent to the formal claims period and

---

**3.** The rule of *Jacobs* was adopted by the IRS in Revenue Ruling 60–247, issued "as a direct response to and in complete disagreement with the decision reached in *Winer.*" 52 *Chi.-Kent L.Rev.* at 673. Judge Hoffman in *Russell* specifically declined to following the Ruling, 260 F.Supp. at 499–500.

**4.** Judge McDermott, dissenting in *Jacobs*, noted:

The situation must be looked at as of some particular time. The decisions settle it that the cut-off date is the date of the decease. So, although it need not be decided in this

case, I am not at all certain that the conclusive analogy as to the father and son, suggested by the majority, is sound. If my father owed me some notes at his death, I see no reason why the executor should not deduct them when paying the estate tax; if, some years later, I should mark them "Paid" and hand them to my mother, I do not know why the government should try to upset the estate tax theretofore correctly paid, and am not nearly as sure as the majority that such effort would be successful.

34 F.2d at 237.

prior to the filing of such claims by the creditors, and where the claims were eventually allowed in full by the state probate court, the interpretation of *Ithaca Trust*, as expounded by *Winer* and *Russell*, is the correct one, and we hold that decedent's obligations, insofar as they were enforceable at the time of his death and were allowed and paid are deductible under § 2053. We do not reach the situation in which claims are not paid by the estate, or in which the claims are not allowed by the probate court, or in which claims are not filed until after the estate has been settled and the final estate tax return filed.

Even if *Russell* were not applicable, however, we would still allow deduction of the enforceable claims. We think it clear that, at least with respect to the $74,828 in new assets included in the second inventory and for which claims were timely filed and allowed by the probate court, the debts are deductible to that amount.[5] The sole question is whether the probate court's order of September 11, 1972, which held the second inventory to be the sole inventory in the estate, and incidentally validated the estate's payment of the claims prior to their being allowed by the court, had the effect of opening the entire estate to the claims for purposes of the estate tax, thus allowing a full deduction.

Although defendant has stated that the probate court had no jurisdiction to set aside the inventory, it has cited no relevant authority to that effect. The probate court has the power to compel the filing of an inventory and also has the power to determine whether this duty has been performed. *See* 4 W. James, *Ill.Prob.L. and Proc.* § 171.3 (1951). The court, in adjusting accounts of administrators on final settlement, has all the powers of a court in equity and may set aside or modify previous judgments allowing claims against the estate. *In re Ekiss' Estate*, 40 Ill.App.2d 1, 188 N.E.2d 348, 350 (1963).

Moreover, we see little difference between the rule that there is no limitation on claims against assets which have not been inventoried and a similar rule for assets which have been improperly inventoried. *See* 6 W. James, *supra*, at § 204.1. Finally, Rule 14.14(j) of the then effective Rules of the Circuit Court of Cook County provided that an amended or supplemental inventory was to be filed and approved by the probate judge if property was improperly described or erroneously included or excluded from the prior inventory. Accordingly, it seems clear that the probate court had the power to issue the September 1972 order.

### III.

Plaintiff's second claim for refund concerns the Internal Revenue Service's method of computation of the marital and charitable deductions. Plaintiff claims that the Service improperly reduced decedent's bequests to his widow and to charity by the amount of the estate tax owed prior to subtracting the deductions. We consider the claims together.

26 U.S.C. § 2055(c) provides:

If the tax imposed by section 2001, or any estate, succession, legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this section, then the amount deductible under this section shall be the amount of such be-

---

5. In this connection, we believe that the requirements of Regulation 20.2053–1(b)(2) with respect to the probate court's allowance of the claims on the merits have been met. The orders of the court on the claims of the Michels indicate the documents and other evidence considered by the court on the specific question of the validity of the loans. In the case of Blanche Greene, there appears to have been the "active and genuine contest" which, under the regulation, creates the presumption of a decision on the merits, since the court appointed a special executor to defend against her claim and the court's order indicates that testimony was given in the proceeding, along with an examination of the documents. On that ground alone, then, we would be prepared to find the claims to be deductible.

quest[s], legacies, or devises reduced by the amount of such taxes.

The corresponding section with respect to the marital deduction, 26 U.S.C. § 2056(b)(4), states:

In determining for purposes of subsection (a) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this section

(A) there shall be taken into account the effect which the tax imposed by section 2001, or any estate, succession, legacy, or inheritance tax has on the net value to the surviving spouse of such interest.

 In both instances, one by statute and the other by judicial interpretation, state law determines whether bequests to charity and to the surviving spouse bear any portion of the estate tax. *See Riggs v. Del Drago*, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942).

 The rule in Illinois is that the burden of federal estate tax and administration expenses falls on a decedent's residuary estate if his will does not provide otherwise. *In re Estate of Phillips*, 1 Ill.App.3d 813, 275 N.E.2d 685 (1971).[6] The issue, therefore, is whether decedent's bequests to Blanche Greene and to charity form part of the residuary estate, and are thus subject to a pro rata diminution for purposes of paying the estate tax, or, alternatively, whether decedent directed otherwise in his will.

Article I of Arthur Greene's will contains a number of specific bequests to Blanche Greene. Article II gives to the Greene-Michel Foundation an amount which "shall be equal to Ten Per Cent (10%) of my residuary estate." Article III gives "one-half of all of the rest, residue and remainder of my estate" outright to Blanche Greene. Then, "subject to the bequests contained in Article I and Article II and the bequest to my wife contained in this Article III," decedent gave "the entire remainder of my estate

(hereinafter referred to as the 'Residuary Estate') to D. Daniel Michel and John Yonco as Trustees."

The Trustees are to pay $200 per month from the net income to the decedent's brother Sam Green for his life, and thereafter to his wife Esther during her life if she survives Sam. If the income is insufficient, the Trustees are to make the payments from principal of the "Residuary Estate." Any remaining income is to be paid to Blanche at least quarter-annually during her life. There follow provisions with respect to the distribution of income and principal after Blanche's death.

Finally, Article X of the will provides: I order and direct my Executor to pay all my just debts and funeral expenses as soon after my death as practical; and to pay, without right of reimbursement, as a part of the expense of administering my estate, all inheritance, estate, transfer and succession taxes (including any interest and penalties thereon) which shall be assessed by reason of my death on any property or interest therein included in my gross estate for tax purposes.

Defendant argues that Article X indicates that decedent intended that the burden of paying taxes be borne in the same manner that the burden of paying administrative expenses, debts and funeral expenses be borne. Following the Article I specific bequests, all taxes, debts and expenses, defendant contends, are to be paid from the remainder, after which 10% would go to charity, 45% would go to Blanche Greene, and 45% would go into the testamentary trust. Defendant reaches this conclusion not only from Article X, but language in *First National Bank of Chicago v. Hart*, 383 Ill. 489, 50 N.E.2d 461 (1943) where the Illinois Supreme Court observed that Illinois has no statutory provision relating to the portion of the estate from which federal estate tax is to be paid, ab-

---

**6.** Since in many cases, the spouse of the decedent is left the residuary estate, this rule can subject the spouse's share "not only to the willy-nilly estate planning or non-planning of decedents dying domiciled in Illinois but also to the calculated planning of one bent on 'tax disinheritance' of the surviving spouse." Flynn, "Estate Tax Apportionment and the Marital Share in Illinois—A Modest Proposal," 58 *Ill.B.J.* 996, 999 (1970).

sent a specific direction in the will, and, therefore, it falls "upon the corpus of the estate" and is "considered an item of expense, such as debts, funeral expenses, and the like."

Plaintiff, however, contends that Article X requires only that taxes and administrative expenses be paid from the same source, and that a reading of the will as a whole leads to the conclusion that the source is the testamentary trust, the true residue of the estate.

■ Illinois law is clear that all the provisions of a will, including the residuary clause, are to be construed as a whole, and effect given, if possible, to every part of the will. *Knisely v. Simpson*, 397 Ill. 605, 74 N.E.2d 695 (1947). *See also Dreyfus v. First Nat. Bank of Chicago*, 424 F.2d 1171 (7th Cir. 1970); *Feder v. Luster*, 54 Ill.2d 6, 294 N.E.2d 293 (1973). Plaintiff asks us to find that the testamentary trust bequest is the "true" residue or, as otherwise called, the "residue of the residue." This concept has been accepted in Illinois and described as follows:

When the residue of an estate is disposed of in parts or fractions, it is frequently necessary to determine whether the testator intends the respective parts or fractions to constitute subdivisions of the entire residue, or to constitute preliminary and ultimate residues with the final part representing the "true" residue or, as it is sometimes called, the "residue of the residue."

An illustration of a share disposed of as a subdivision of the entire residue is one which divides the residue into two parts, with one part being given half to A and half to B, and the other part being given half to C and half to D. A typical case of a "true" residue is one in which the testator in disposing of his residuary estate, carves therefrom portions of the residue and disposes of those portions to designated persons or users and then passes *that which remains* to others. In such case the "true" residue is the final portion.

In general, the test of whether a share or part is a subdivision of the entire residue, or constitutes one of several residues with the final division being the "true" or ultimate residue, turns on the language used by the testator in describing the final portion. If he gives "whatever remains" or "the balance after making particular gifts," or other terminology indicative of an intent that the final division is a "catchall" for what may not have been disposed of by prior gifts, the disposition will normally be construed as one of preliminary and ultimate residues.

1 James, *supra*, at 43.51a (1975 Supp. by Austin Fleming) (emphasis in original; citations omitted). *See also O'Connell v. Gaffney*, 23 Ill.2d 611, 179 N.E.2d 647 (1962); *Molner v. Silbert*, 8 Ill.App.2d 388, 132 N.E.2d 36 (1956).

■ We agree with plaintiff's interpretation of the "subject to" language of Article III and her contention that it indicates that the testamentary trust was intended to be whatever was left after the previous marital and charitable bequests and that the testamentary trust is the true "Residuary Estate." This is consistent with the general structure of the will in which "residue" is obviously used as synonymous with "remainder" and the use of the designation "Residuary Estate" capitalized when the final bequest to the Trustees is made in Article III. It is also apparent that decedent's intention throughout the will was to give as much of his estate as possible to his wife, in terms of property as well as discretion in disposition, and that such intent is inconsistent with a construction that taxes be paid from her share. Accordingly, we find that the trust is the true residue of the estate.

As indicated earlier, there remains the additional question of whether decedent directed that the taxes be paid from any particular fund. If not, as held in *In re Estate of Phillips, supra*, the burden of administration expenses and federal estate taxes falls on the "Residuary Estate." The resolution of this question, of course, involves an interpretation of Article X of the will.

The government contends that the decedent intended that his Executor pay all debts, funeral expenses, expenses of administration and applicable taxes in the same manner and from the same source. Accordingly, it urges that the decedent intended all such payments to be made from the gross estate before either the 10% bequest to charity or the bequest to his widow was calculated and distributed. The plaintiff, on the other hand, urges that Article X, properly interpreted, provides only that the federal estate taxes are to be paid "without right of reimbursement, as a part of the expense of administering my estate," without any identification of the fund from which they are to be paid, and that, therefore, they are under Illinois law payable from the "true residue."

While the will is far from a model of clarity, it seems obvious that it was not intended to assimilate debts and funeral expenses with the costs of administration, including estate taxes. The direction as to the former is that they are to be paid "as soon after my death as practical." Obviously, the amounts to be distributed to charity and the decedent's widow, the costs of administration and taxes cannot be determined until much later after all claims, etc., have been paid. Other than the fact that debts, funeral expenses and costs of administration including estate taxes are all dealt with in Article X, there is no basis for concluding that the decedent intended them all to be paid from the same fund. Certainly, they could not be paid at the same time. In addition, the inclusion of the phrase "without right of reimbursement" implies that the taxes were to be paid out of a particular fund, not out of the total corpus as the government contends. There could be no possible reimbursement if the taxes were deducted before the charitable bequest and the widow's bequest were determined. We conclude that the will does not specify the source or fund from which the federal estate taxes are payable and under Illinois law they are, therefore, payable from the trust "Residuary Estate and not from either the charitable or widow's bequests.

An order will therefore enter denying defendant's motion to strike, granting plaintiff's motion for summary judgment on the question of the deductibility of the loans made to decedent subsequent to 1959, and granting plaintiff's motion for summary judgment on the issue of computation of the marital and charitable deductions. We deny plaintiff's motion for summary judgment with respect to the loans made in 1955 and 1958 on the ground that there is a question of fact as to decedent's intent as to order of payment. The plaintiff and the government are given thirty (30) days in which to present any evidence as to the decedent's intent with respect to the specific application of any payments made by him to particular loans. As we noted *supra*, if no evidence is produced on this question, we will grant summary judgment to plaintiff with respect to all of the loans except $33,750 owed to Blanche Greene which under any theory is barred by the statute of limitations. In order to expedite proceedings, the parties are ordered to draft recomputed tax returns under each of the possible alternatives so that a final judgment on the amount of refund can be made.