## COMMISSIONER OF INTERNAL REVENUE v. STRAUSS et al.

## STRAUSS et al. v. COMMISSIONER OF INTERNAL REVENUE.
### Nos. 5314, 5315.

Circuit Court of Appeals, Seventh Circuit.
March 30, 1935.

Rehearing Denied June 10, 1935.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and Warren F. Wattles, Sp. Assts. to Atty. Gen., for Commissioner of Internal Revenue.

Albert L. Hopkins, Harry B. Sutter, Jay C. Halls, and Anderson A. Owen, all of Chicago, Ill., and Samuel H. Horne, of Washington, D. C., for Jack M. Strauss et al.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

EVANS, Circuit Judge.

Both parties appeal from a decision of the Board of Tax Appeals which awarded a deficiency estate tax against the estate of Milton L. Strauss, deceased. The Commissioner objects to the Board's exclusion from the gross estate of a substantial sum ($80,350.71), which the decedent had placed in a trust fund. He also challenges the deductibility of certain loans alleged to have been made to decedent by his wife and his son, which loans the Board held deductible. The executors on their appeal dispute the correctness of the Board's action in including in the gross estate the value of the decedent's reversionary interest in the trust fund. The story of the creation of this fund will be set forth more specifically later. The executors also complain because the Board did not permit a deduction of $5,000 which the Probate Court allowed the widow pending the administration of the estate.

Milton L. Strauss died May 7, 1926, leaving an estate which was insolvent except for insurance on his life. In 1914, he created a trust, and the present controversy is largely over the inclusion (and exclusion) of that trust fund, or a part of it, in the gross estate of the decedent. Strauss first transferred $50,000 to a trust fund, the use and disposition of which was governed by a trust agreement. By its terms, his wife was made trustee. To this fund of $50,000, contributions were subsequently made by him, as well as by his wife and his children. By the terms of the original trust,

which was amended several times, the wife was to receive the income for twenty years or until her demise, if it occurred before twenty years. The principal was thereupon to be divided between the two children.

Through additions and accretions to the fund, the trust grew to $250,000 by 1920 and $337,510.94 at the time of Strauss' death. Of this latter sum Strauss had contributed $179,018.60. The Board found that $98,667.89 of the amount contributed by Strauss should be included in his gross estate. This was the reversionary interest in the trust fund, and $80,350.71, the value of the wife's life estate, was excluded from the decedent's gross estate.

$77,812.25 of the trust were the proceeds of the sale of decedent's residence during his life time. The Board, against the contention of the executors, found this property was, at the time of its sale, the sole property of the deceased. The Board did not include in the gross estate the sums contributed by the wife and children to the trust fund, and the Commissioner acquiesces in this ruling.

The difference between the parties arises out of the revocation provision of the original trust. The amended trust agreement of 1920 also carried a revocation clause, but it was incomplete in form.

On the other issue, the Board held that a claim of the widow for $34,063.05 (which included interest) was deductible from the decedent's gross estate. It also deducted a claim for $11,000, which represented a loan by a son. Both loans were represented by written memoranda. The Probate Court made the widow an award of $5,000, but the Board did not allow this deduction. Neither of the two claims was ever presented to, or allowed by, the Probate Court. Nor were they or the widow's allowance ever paid.

The original trust agreement contained the following provision, to-wit:

"(c) Upon the expiration of said period of twenty (20) years, or upon the prior death of said party of the second part, to divide among, pay, transfer and deliver to my said daughter, Dorothy Woolner Strauss and to my said son, Jack Milton Strauss, in equal shares between them, the said trust estate in its then condition. * * *

"It is further understood and agreed that this instrument, and all rights, powers, prerogatives and privileges therein granted, and all duties or obligations imposed upon either of the parties hereto, *may be cancelled, revoked and terminated upon the mutual consent of the parties hereto;* in which event said trust estate shall again revert to said first party, to have and to hold the same in precisely the same manner as though this instrument had not been executed."

In 1920, decedent and his wife amended the trust agreement. Material provisions of the amendment are herewith set forth:

"The clauses in said 'Original Trust Agreement', designated as 'b' and 'c', together with all of the various subdivisions and paragraphs under any and each of said clauses are hereby declared *to be stricken out and of no effect, and all of the terms and conditions thereof, and of each of said clauses, or parts thereof, are hereby declared cancelled and annulled, and the following clauses are* hereby adopted in lieu thereof. * * *

" * * * In the event that the payment and transfer of bonds and securities of this trust estate of the sum of Fifty Thousand Dollars ($50,000) shall have been made to either of said beneficiaries, as provided in the above paragraphs, numbered respectively '3' and '4', then the distributive share of such beneficiary, as given and granted under the provisions of this paragraph, shall abate proportionately, both in principal and interest, it being the intention hereof that the said beneficiaries, Dorothy Strauss Rubel and Jack Milton Strauss, shall finally each receive a total of one-half of said trust estate, *unless the said trust is hereafter revoked as hereinafter provided for.*"

Aside from the revocation clause, the amendment provided for a stipulated income to the daughter, the balance of the income to go to Mrs. Strauss, and if Mr. Strauss survived her, to him for life.

Through an inadvertence or mistake or some unexplainable reason the "hereinafter provided for" revocation of the trust was not thereafter stated in the amended agreement. A similar clause appeared in a third amendment executed in 1924. Another, but unimportant, amendment to the personnel of the trust was made shortly before decedent's death.

The determinative question, so far as the trust fund is concerned, revolves around

the revocation clause of the original and amended trust indenture.

Subsection (d) of section 302, Revenue Act of 1926 (26 USCA § 1094 (d), is the storm center of opposing counsels' attack and counter attack.

Material provisions of section 302 are:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, *either by the decedent alone or in conjunction with any person,* to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

"(h) Except as otherwise specifically provided therein subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act." 26 USCA § 1094 (d, h).

When we attempt to construe and apply section 302 (d) to the facts of the instant case, it is necessary to examine the trust agreement and the amendments to see whether, at the date of his death, Strauss could "alone or in conjunction with any person" alter, amend, or revoke the trust.

The trust as originally drawn provided for its revocation "upon the mutual consent of the parties hereto." In such event the fund reverted to the grantor.

The amendment provided that the revocation clause "should be stricken out and of no effect," etc., and "the following clauses * * * hereby adopted in lieu thereof." One of said clauses contained the provision "unless the said trust is hereafter revoked as hereinafter provided for." There followed no "hereinafter provided for" provision in either the amendment of 1920 or any of the subsequent amendments.

Counsel for both parties in their briefs have studiously avoided any discussion of the effect of this 1920 amendment. The Board of Tax Appeals concluded that it did not affect the original revocation clause. We are of the same opinion, although a persuasive argument may be advanced in favor of the existence of an unqualified power of revocation in the settlor. In reaching our conclusion, we assume: (a) A general cancellation of an existing power of revocation left the property in the uncontrolled possession of the transferee. A gift which otherwise may have been conditional or qualified becomes complete upon the elimination of the condition. Burnet v. Guggenheim, 288 U. S. 280, 53 S. Ct. 369, 77 L. Ed. 748. (b) The amendments to the original agreement which provided that the clause containing the revocation provision "be stricken out" would have eliminated the revocation clause of the first or original trust agreement were it not for the other words "and the following clauses are hereby adopted in lieu thereof" appearing in the same sentence. (c) The provision in a following clause "unless the said trust is hereafter revoked as hereinafter provided for" recognizes the existence of a power to revoke. The word "revoke" when applied to a grant ordinarily contemplates action by the settlor. A reservation of a power to revoke unaccompanied by other language, therefore, would apply only to the grantor or settlor.

The clause under consideration was, however, construed by the parties shortly after the amendment was executed. The careless work of the scrivener was unfortunate, but we think it clear that the parties, the settlor and the trustee, agreed between themselves that the power of revocation was to be exercised the same as was expressly provided for in the original agreement. When they adopted the second amendment in 1922 they so acted. Clauses (b) and (c), which were to be eliminated, contained other provisions as well as the revocation clause. Obviously, the scrivener left out part of the agreement of the parties. The entire agreement was not reduced to writing. Otherwise, the second and third amendments are void.

In reaching the conclusion that the original power of revocation remained unchanged, we are influenced largely by the fact that a power of revocation was expressly reserved. The omission to state how the revocation might be exercised was

due to an oversight or mistake of scrivener, not to absence of agreement of the parties. This, we think, is as clear as the fact that the power to revoke was reserved. The parties did shortly afterwards exercise their power to revoke, and they did it as provided for in the original agreement. This conclusion is strengthened by the further fact that the original revocation clause was merely to cancel, revoke, or terminate the agreement upon the mutual consent of the parties thereto. They apparently assumed that the power to cancel, revoke, and terminate carried with it the lesser power to modify or amend. If not, then all of the amendments are null and void and the trust agreement must be construed as originally drawn, namely, with a power to revoke in Strauss and his wife, as trustee.

■ This brings us to the main issue. Commissioner asserts the property contributed by the decedent to the trust fund must be included in his gross estate because specifically covered by section 302 (d) as the enjoyment was dependent upon the action of the settlor "alone or in conjunction with any person." The executors argue that the phrase "with any person" should be limited and restricted so as to read or mean "with any person *not a beneficiary of the trust.*" In support of their position, the executors cite three cases (Commissioner v. City Bank Farmers' Trust Co., 74 F.(2d) 242 (C. C. A. 2); Lit v. Commissioner, 72 F.(2d) 551 (C. C. A. 3); White, Collector v. Poor et al., 75 F.(2d) 35 (C. C. A. 1) decided Jan. 31, 1935) which are impressive. We hesitate to announce our conclusions which are at variance with the views of courts for which we have such wholesome respect. We are, however, unable to justify a construction of the statutes such as is stated in these decisions.

When Congress in section 302 (d) said, "either * * * alone or in conjunction with any person," we are unable to find support or justification for restricting the meaning of the words used by adding the additional phrase "not a beneficiary of the trust." The section may without the words of limitation approach close (at least closer) to the point where invalidity may be asserted. It may in the opinion of some be an unwise imposition of the estate tax burden, but there is no obscurity of language, no uncertainty of meaning, and no embarrassment arising out of inconsistent provisions of the Act.

■ Section 302 (d) was enacted for the purpose of defeating efforts to avoid estate taxes. This is so clear that a reference to congressional debates is quite unnecessary. The need of such legislation is illustrated by the facts of the instant case. A. died insolvent. Shortly before his death he created a trust fund, aggregating several hundred thousand dollars. His wife and his children were made the beneficiaries. As trustee, he named his wife. He reserved the right to revoke the trust with the consent of his wife. Before section 302 (d) was enacted he could have thus avoided the Federal estate tax. Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397. It was to prevent the avoidance of an estate tax under such circumstances that section 302 (d) was enacted. Its language is as clear as its intention. It must stand or fall on the words chosen by Congress.

As stated in United States v. Goldenberg, 168 U. S. 95, 102, 18 S. Ct. 3, 4, 42 L. Ed. 394:

"The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used. He is presumed to know the meaning of words and the rules of grammar. The courts have no function of legislation, and simply seek to ascertain the will of the legislator. It is true there are cases in which the letter of the statute is not deemed controlling, but the cases are few and exceptional, and only arise when there are cogent reasons for believing that the letter does not fully and accurately disclose the intent. No mere omission, no mere failure to provide for contingencies, which it may seem wise to have specifically provided for, justify any judicial addition to the language of the statute."

Unfortunately this section has not been applied by the Supreme Court to facts such as we have here. Porter v. Commissioner, 288 U. S. 486, 53 S. Ct. 451, 77 L. Ed. 880, is the nearest in point. It is clearly distinguishable from the instant case in its fact background. There are expressions, however, in that case which strongly support the conclusion here reached. Among other things, it distinguishes Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397, which is the basis of the executors' argument and the chief reliance of the courts in the three decisions above referred to.

It further supports the view that section 302 (d), 26 USCA § 1094 (d), is a valid enactment. See 278 U. S. at page 444, 53 S. Ct. 451, 453. It also necessitates a construction of section 302 (d) uninfluenced by section 302 (a), 26 USCA § 1094 (a). In other words, section 302 (d) covers something not included in section 302 (a).

It follows that the Board erred in not including in decedent's gross estate all the trust fund contributed by him thereto.

█ As to deductible debts, we agree with the Board of Tax Appeals. Just as we held that the Board and the courts can not exclude trust funds that are included by the statute, so do we hold that the Commissioner may not exclude deductions in the way of claims which the statute allows. In United States v. Mitchell et al., 74 F.(2d) 571, decided by this court December 8, 1934, we had occasion to consider the same question although the positions of the parties were there reversed. There the Commissioner was assailing the deductibility of a claim which had been allowed by the Probate Court and paid by the executors.

The statute governs in either case. Section 303 (a) (1), Revenue Act of 1926 (26 USCA § 1095 (a) (1), does not require the allowance of the debt by the court or its payment by the estate in order that it may be deducted from the gross estate. The Commissioner was without authority to make a rule which refused the full effect of the deductible allowance in the way of claims which was provided for by the said section 303 (a) (1).

█ The allowance to the widow of $5,000 was not deductible because the same section required that the amount allowed by the court to dependents should be "reasonably required and *actually expended.*"

We have not overlooked the attack which the executors have made upon the finding of the Board to the effect that the proceeds of the sale of the homestead belonged to the decedent when the money was paid into the trust fund. We are satisfied that the evidence supported the finding, and it would serve no useful purpose to comment upon the facts or the reasons which lead to this conclusion.

The order is reversed with directions to the Board of Tax Appeals to redetermine the amount of the tax in accordance with the views expressed in this opinion.