T.C. Memo. 1999-82


UNITED STATES TAX COURT


ESTATE OF EVELYN M. MCMORRIS, DECEASED, JERRY D. MCMORRIS,
PERSONAL REPRESENTATIVE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1969-95.                    Filed March 17, 1999.


<u>Kevin L. Brown</u> and <u>Leslie R. Kehl</u>, for petitioner.

<u>Robert A. Varra</u>, for respondent.


MEMORANDUM OPINION


COHEN, <u>Chief Judge</u>:  Respondent determined a deficiency in
the Federal estate tax of the estate of Evelyn M. McMorris (the
estate) in the amount of $232,035.  By amendment to the answer,
respondent asserts an increased deficiency in the amount of
$2,383,056.

After concessions, the issue for decision is whether the estate is entitled to deductions for (1) the portion of a Federal income tax liability to be refunded due to a reduction in reported income and (2) the corresponding portion of a State income tax liability for which a refund has yet to be requested.

This case was submitted fully stipulated under Rule 122. Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure. The stipulated facts are incorporated herein by this reference.

Background

Evelyn M. McMorris (decedent) died on March 4, 1991, a resident of Colorado. The personal representative, decedent's son Jerry D. McMorris (Jerry McMorris), was a resident of Colorado at the time the petition was filed in this case.

Donn D. McMorris, decedent's husband (Mr. McMorris), died on April 10, 1990. On June 11, 1990, decedent was declared incompetent due to irreversible advanced Alzheimer's disease, and Jerry McMorris was appointed as conservator for her estate. In partial distribution of decedent's interest in her husband's estate, 13.409091 shares of stock in N.W. Transport Services, Inc. (NW), were distributed to the estate of Evelyn M. McMorris, Protected Person. On September 19, 1990, decedent, through Jerry

McMorris as her conservator, entered into an agreement with NW, through Jerry McMorris as president, to redeem the 13.409091 shares of NW stock in exchange for $29,500,000, payable over 120 months with interest at 10 percent.

The Federal estate tax return (the estate tax return) for decedent's estate was filed on December 4, 1991. The estate tax return reflected deductions for decedent's 1991 Federal and Colorado income tax liabilities of $3,960,525 and $641,222, respectively. Decedent's Federal income tax return for 1991 (the 1991 Federal income tax return) was filed timely on or before April 15, 1992. The 1991 Federal income tax return reflected an income tax liability of $3,681,703, which amount was paid with the return. Decedent's Colorado income tax return for 1991 also was filed timely on or before April 15, 1992, and reflected an income tax liability of $639,826, which was paid with the return.

A large part of the income reported on decedent's 1991 income tax returns resulted from gains on the redemptions of NW stock that were passed through to decedent's 1991 income tax returns from the fiduciary income tax return for Mr. McMorris's estate for the fiscal year ended March 31, 1991. The NW stock had been included on Mr. McMorris' estate tax return at an appraised value of $1,726,562.50 per share. Accordingly, decedent's basis in the NW stock was determined using the value of $1,726,562.50 per share, and substantial gain resulted. After

examination of decedent's estate tax return, respondent determined that the amounts allowable as deductions for decedent's Federal and Colorado income tax liabilities were $3,680,038 and $639,826, respectively. Respondent issued a notice of deficiency on November 8, 1994. Petitioner does not contest these adjustments, having conceded all issues raised in the notice of deficiency.

In January 1996, the parties in the case of Estate of Donn D. McMorris v. Commissioner, docket No. 5952-94, reached a basis for settlement that provided for an increase in the value of the NW stock included in Mr. McMorris' estate to $2,500,000 per share. The increase in the value of the NW stock created a deficiency in the estate taxes for Mr. McMorris' estate. The increase in value of the NW stock also increased decedent's basis in the NW stock, thereby eliminating the income attributable to the redemptions of the NW stock.

A protective claim for refund relating to the fiduciary income tax return of Mr. McMorris' estate for the fiscal year ended March 31, 1991, had been filed on September 12, 1994. On or about January 30, 1996, an amended fiduciary income tax return was filed. On January 30, 1996, an amended 1991 Federal income tax return was filed for decedent, claiming a refund of $3,332,443. In settling the case of Estate of Donn D. McMorris v. Commissioner, supra, the parties and petitioner agreed that

the overpayments of tax claimed on the amended fiduciary income tax return and decedent's amended income tax return, as finally adjusted, would be used to offset the deficiency in estate tax in that case.

Based on the above-described adjustments in Estate of Donn D. McMorris v. Commissioner, supra, decedent's amended 1991 Federal income tax return reflected a loss from the redemption of the NW stock, rather than the gain previously reported, and certain dividend income previously reported was eliminated. A refund of $3,330,778 of decedent's 1991 Federal income taxes was approved by respondent. Due to the large amount of the refund, it was subject to review by the Joint Committee on Taxation. Petitioner's refund claim was reported to the Joint Committee on October 30, 1997. The 30-day period for review passed without objection. As of December 16, 1997, the closing of the record in this case, neither an amended 1991 Colorado income tax return nor a protective claim for refund had been filed with the Colorado Department of Revenue.

Respondent's amended answer requests an increased deficiency in estate tax based on a reduction of the amounts claimed as debts of decedent for 1991 Federal and Colorado income taxes.

Discussion

Section 2053(a)(3) provides that the value of the taxable estate shall be determined by deducting from the value of the

gross estate such amounts for claims against the estate as are allowable by the laws of the jurisdiction under which the estate is being administered.

> The amounts that may be deducted as claims against a decedent's estate are such only as represent personal obligations of the decedent existing at the time of his death, whether or not then matured, and interest thereon which had accrued at the time of death.  * * * Only claims enforceable against the decedent's estate may be deducted.  * * *  [Sec. 20.2053-4, Estate Tax Regs.]

Unpaid income taxes, whether or not determined as of the date of death, are deductible if they are on income properly includable in an income tax return of the decedent for a period before his or her death.  See Schatzinger v. Commissioner, 12 B.T.A. 1353 (1928); sec. 20.2053-6(f), Estate Tax Regs.

Deduction for Federal Income Tax Liability

Respondent's position is that the estate tax deduction for petitioner's 1991 Federal income tax liability should be limited to the amount ultimately determined to be due.  Petitioner's position is that the reported income tax liability, except as modified by respondent's determination in the 1994 notice of deficiency, should be allowed in full, unreduced by the refund approved in 1997.  The decision in this case turns on whether we should consider the postdeath adjustment in petitioner's income tax liability due to the change in valuation of the NW stock.

The Supreme Court in Ithaca Trust Co. v. United States, 279 U.S. 151, 155 (1929), stated that "The estate so far as may be is

settled as of the date of the testator's death."  This principle is followed in cases involving the valuation of a claim that is valid and fully enforceable on the date of a decedent's death. See Estate of Smith v. Commissioner, 108 T.C. 412, 419 (1997), supplemented by 110 T.C. 12 (1998).  In cases where the decedent's creditor has only a potential, unmatured, contingent, or contested claim that requires further action before it becomes a fixed obligation of the estate, postdeath events warrant consideration.  Id.  Where a claim is disputed, contingent, or uncertain as of the date of a decedent's death, the estate is not entitled to a deduction until the claim is resolved and it is determined what amount, if any, will be paid.  Id.

We have held that a claim that is valid and enforceable at the date of a decedent's death must remain enforceable in order for the estate to deduct the claim.  Technical claims that disappear in the light of subsequent circumstances should not be allowed.  Thus, postdeath events must be taken into consideration in determining the enforceability of a claim that a creditor fails to make and preserve within the time allowed by local law. See Estate of Hagmann v. Commissioner, 60 T.C. 465, 469 (1973), affd. 492 F.2d 796 (5th Cir. 1974).

Petitioner argues that the income tax liability that was timely paid was a valid and enforceable claim on the date of decedent's death, and, therefore, postdeath events are not to be

considered.  Petitioner cites <u>Propstra v. United States</u>, 680 F.2d 1248, 1254 (9th Cir. 1982), for its holding that, "as a matter of law, when claims are for sums certain and are legally enforceable as of the date of death, post-death events are not relevant in computing the permissible deduction."  That case involved lien claims against property owned by the decedent.  At the time of the decedent's death, the water users' association to which the money was owed had no authority to settle its claims for less than the full amount, and the executrix had no legal or factual arguments to support a challenge.  After the estate return was filed, the association's bylaws were amended to authorize it to settle outstanding claims.  The Court of Appeals for the Ninth Circuit declined to follow cases like <u>Estate of Hagmann v. Commissioner</u>, <u>supra</u>, and applied the <u>Ithaca Trust</u> principle enunciated <u>supra</u> p. 6.  The Court of Appeals made it clear that the date of death was the critical reference point in testing whether a claim was enforceable.

Petitioner also cites <u>Estate of Sachs v. Commissioner</u>, 88 T.C. 769 (1987), revd. 856 F.2d 1158 (8th Cir. 1988), which involved a deduction for income tax where a refund had occurred due to a change in legislation 4 years after the decedent's death.  The decedent's reported income tax liability previously had been increased in accordance with a Supreme Court opinion decided 2 years after the decedent's death, and an increased

estate tax deduction for that liability had been allowed. The parties did not contest these adjustments. The legislation negated the effect of the Supreme Court decision. This Court reasoned that the legislative change was not foreseeable and that the claim for income tax had been paid in accordance with the law in effect as of the date of death. We held that the estate was entitled to deduct, as a claim against the estate, the income tax paid unreduced by the refund. The Court of Appeals for the Eighth Circuit reversed, holding that the effect of the legislation was retroactive and that no deduction was allowable for the refunded tax.

This case is unlike Estate of Sachs v. Commissioner, supra, which dealt with a change in income tax resulting from retroactive legislation, not with the adjustment otherwise resulting from the examination of the income tax and estate tax returns. Also, the holding in Propstra v. United States, supra, cited by petitioner applies where claims are for "sums certain" as of the date of death. The amount of tax reported on a Federal income tax return may be challenged by the Commissioner until the applicable period of limitations has expired. See sec. 6501. Similarly, the taxpayer may request a refund and, if denied, pursue judicial remedies. See secs. 6511, 6512, 6532, 7422. The amount of tax reported, if contested, remains contingent until a

decision is reached.  See Broadhead Trust v. Commissioner, T.C. Memo. 1972-196.

In the instant case, petitioner filed an amended Federal income tax return requesting a refund.  The request stemmed from the agreement of the parties as to the increased value of the NW stock included in Mr. McMorris' estate, which value became the basis of the NW stock redeemed from decedent.  Because the amount of income tax was challenged in that fashion, it is appropriate that we consider postdeath events when determining the deduction for estate tax purposes.

Respondent has approved petitioner's refund request.  That portion of the Federal income tax liability that is to be refunded is no longer a valid and enforceable claim against the estate.  Accordingly, we hold that the amount of the deduction for petitioner's Federal income tax liability is reduced by the amount of the refund.  Cf. Estate of Shedd v. Commissioner, 37 T.C. 394 (1961), affd. 320 F.2d 638 (9th Cir. 1963) (deduction for transferee liability reduced by amount recovered from transferor husband's estate upon receipt of refund); sec. 20.2053-6(f), Estate Tax Regs.

Deduction for Colorado Income Tax Liability

An individual's liability for Colorado income tax is based on Federal taxable income with certain adjustments.  See Colo. Rev. Stat. sec. 39-22-104(1) (1998); see id. sec. 39-22-601(6)(a)

(1998) (Colorado taxpayer required to report changes in Federal taxable income due to final determination by the Commissioner or to taxpayer's filing amended Federal return). Respondent's position is that the deduction for the Colorado income tax liability should be limited to the amount of the State tax on income properly includable in decedent's Colorado return, which would reflect the adjustment in decedent's income for Federal income tax purposes. Petitioner's position is that the entire amount of the Colorado income tax liability as paid should be allowed as a deduction because the liability was valid and enforceable as of the date of decedent's death, thereby precluding consideration of postdeath events. In the alternative, petitioner argues that, even if postdeath events are considered, respondent has not established that a refund of Colorado tax would be granted.

The same analysis and result apply to the Colorado income tax claim as apply to the Federal tax liability. Colorado statutes provide for assessment of deficiencies and for claims for refunds. Where either the Federal or Colorado income tax return is challenged, the Colorado income tax may be subject to change. See Colo. Rev. Stat. sec. 39-22-601(6). Postdeath events are thus relevant to determining whether the claim is enforceable.

Under the applicable period of limitations, a refund of Colorado income tax is available or would have been available to petitioner after the correct Federal tax liability was determined.  As of December 16, 1997, the closing of the record in this case, petitioner had not filed a protective claim with the State of Colorado or an amended Colorado income tax return. Section 39-21-108(1)(a) of the Colorado Revised Statutes (1998) provides that, in the case of income tax,

> the taxpayer must file any claim for refund or credit for any year not later than one year after the expiration of the time provided for filing a claim for refund of federal income tax, including any extensions of the period by agreement between the taxpayer and the federal taxing authorities; but nothing in this subsection (1) shall be construed to shorten the period for filing claims provided by section 39-22-601(6)(f).
> * * *

Section 39-22-601(6)(f) of the Colorado Revised Statutes provides:  "Notwithstanding any provision of law, the statute of limitations relating to claims for refund or credit for any year shall not expire prior to the expiration of the time within which a deficiency for such year could be assessed."  Generally, a deficiency in Colorado income tax can be assessed until 1 year after the date of expiration of the period for assessing deficiencies in Federal income tax, including any extensions of the period by agreement between the taxpayer and the Internal Revenue Service.  See Colo. Rev. Stat. sec. 39-21-107(2).

The claim for refund of Federal income tax must be filed within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever is later. See sec. 6511(a). The expiration of the period for assessing deficiencies in Federal income tax generally occurs 3 years after the return was filed. See sec. 6501(a).

Petitioner filed decedent's original 1991 Federal income tax return and her Colorado return on or before April 15, 1992. The taxes were paid with the returns. Although the parties' arguments focus on the period of assessing a deficiency, the record contains no evidence of agreements or other actions that would have extended the period of assessment. The period for filing a refund claim for Federal income tax and that for assessing a deficiency in Federal income tax both expire 3 years after the date decedent's Federal income tax return was filed. Thus, the period in which a claim for refund of decedent's Colorado income taxes could have been filed ran at least until April 15, 1996, 1 year later. So far as the record reflects, only petitioner's failure to file a claim for refund of Colorado taxes prevented or prevents receipt of the refund. (Moreover, it is not clear that the refund of Colorado taxes will never be paid or credited to petitioner.)

Petitioner filed the amended Federal income tax return on January 30, 1996, once the parties in <u>Estate of Donn D. McMorris</u>

v. Commissioner, docket No. 5952-94, had reached the basis of settlement. At that time, the period in which to file a claim for refund of Colorado income taxes was still open. We recognize that, in spite of the settlement agreement, respondent did not approve petitioner's refund request until late in 1997. However, nothing in the Colorado tax statutes prevented petitioner from filing a claim for refund of Colorado income taxes in advance of that approval. Indeed, had petitioner filed such a refund claim, petitioner would have preserved the right to sue for a refund pursuant to section 39-21-108(1)(a) of the Colorado Revised Statutes (1998), which provides:

> No suit for refund may be commenced before the expiration of six months after the date of filing the claim for refund required under this section unless the executive director of the department of revenue renders a decision thereon within that time, nor after the expiration of two years after the date of mailing * * * of a notice of disallowance of the part of the claim to which the suit relates. * * *

Thus, under the Colorado statutes of limitations, petitioner could have filed a timely claim for refund of that portion of Colorado income tax related to the reduction in Federal taxable income. The calculation of Colorado income tax is dependent upon the amount of Federal taxable income, and decedent's Colorado income tax would be reduced proportionately. Petitioner's unexplained failure to seek a refund of Colorado income tax does not prevent the correct determination of the amount of the claim. We hold that the deduction for decedent's Colorado income tax

liability should be reduced to reflect the amount of Colorado income tax calculated using the decreased Federal taxable income.

To reflect petitioner's concessions, the above holdings, and additional administrative expenses,

<u>Decision will be entered under Rule 155</u>.