F I L E D
United States Court of Appeals
Tenth Circuit

MAR 20 2001

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

ESTATE OF EVELYN M.
McMORRIS, Deceased; JERRY D.
McMORRIS, Personal Representative,

    Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

    Respondent-Appellee.

No. 99-9031

Appeal from United States Tax Court
(No. 1969-95)

Kevin L. Brown, Jones & Keller, P.C. (Edward T. Lyons, Jr., and M. Brian
Cavanaugh, Jones & Keller, P.C.; John R. Wilson and Peter J. Perla, Steiner,
Darling, Hutchinson & Wilson LLP, with him on the brief), Denver, Colorado, for
the appellant.

John A. Dudeck, Jr. (Jonathan S. Cohen with him on the brief), Department of
Justice, Tax Division, Washington, D.C., for the appellee.

Before **BRISCOE, HOLLOWAY, and POLITZ,** [1] Circuit Judges

---

[1] The Honorable Henry A. Politz, Circuit Judge, United States Court of
Appeals for the Fifth Circuit, sitting by designation.

**BRISCOE, Circuit Judge.**

---

The Estate of Evelyn M. McMorris appeals a tax court decision in favor of the Commissioner of Internal Revenue. The tax court held that the Commissioner properly considered an event occurring after the death of Evelyn McMorris in disallowing her estate's deduction pursuant to 26 U.S.C. § 2053(a)(3) for payment of federal and state income taxes owed at the time of her death. Exercising jurisdiction under 26 U.S.C. § 7482(a)(1), we reverse and remand with directions to vacate the deficiency assessment at issue here and to recalculate any remaining unrelated deficiencies owing.

## I.

The facts are undisputed. Donn McMorris, Evelyn's husband, died in 1990, and Evelyn received 13.409091 shares of stock in NW Transport Service, Inc., from his estate. The stock was reported in Donn's estate tax return at an appraised value of $1,726,562.50 per share as of the date of his death and that value became Evelyn's basis in the stock.[2] Evelyn, through her conservator Jerry McMorris, entered into an agreement with NW Transport to redeem the stock for $29,500,000.00 (approximately $2,200,000.00 per share), payable over 120 months at ten percent interest.

---

[2] See 26 U.S.C. § 1014; Treas. Reg. 1.1014-3(a).

Evelyn died in 1991, a resident of Colorado. In her federal estate tax return, her estate claimed deductions of $3,960,525.00 and $641,222.00, respectively, for her 1991 federal and state income tax liabilities. Federal income tax in the amount of $3,681,703.00 and Colorado income tax in the amount of $639,826.00 actually were paid with Evelyn's 1991 individual tax returns. A large part of the income reported on Evelyn's income tax returns resulted from the gain on redemption of the NW Transport stock.

In January 1994, the Commissioner issued a deficiency notice to Donn's estate disputing, among other things, the value of the NW Transport stock. Specifically, the Commissioner valued the stock at $3,618,040.00 per share. Donn's estate contested the Commissioner's determinations and, after lengthy negotiations, the parties reached a settlement in January 1996 for an increased value of the NW Transport stock at $2,500,000.00 per share as of Donn's death. This value became the new basis for the NW Transport stock redeemed by Evelyn. As a result of her increased basis, the taxable gain from Evelyn's redemption of the stock was eliminated and she realized a loss.

Evelyn's estate filed an amended 1991 federal individual income tax return seeking a refund of $3,332,443.00. The amended return reflected a loss from redemption of the NW Transport stock and eliminated certain dividend income reported on the original return. Meanwhile, Evelyn's estate was challenging a

3

deficiency notice received in November 1994 concerning an unrelated gift deduction in the amount of $140,000.00 in her estate tax return.[3] The estate contested the deficiency in tax court and that litigation was ongoing when Evelyn's amended 1991 federal income tax return was filed in January 1996.

In March 1996, the Commissioner filed an amended answer in Evelyn's estate tax litigation, asserting an increased deficiency in estate taxes. According to the Commissioner, the estate was no longer entitled to deduct Evelyn's 1991 federal and state individual income taxes because those liabilities were subject to refunds. Indeed, the Commissioner approved a $3,330,778.00 refund of Evelyn's 1991 federal income taxes in 1997, but the record filed with this court does not indicate that her estate filed an amended 1991 state income tax return or a protective refund claim with the Colorado Department of Revenue.

Evelyn's estate later conceded the Commissioner's original deficiency determination in its entirety (including disallowance of the $140,000.00 gift deduction). However, the estate refused to accept the Commissioner's view that the estate's deduction for Evelyn's income tax liabilities should be limited to the amount ultimately found to be due and owing by Evelyn. The estate instead took

---

[3] The Commissioner also determined the estate's allowable deductions for Evelyn's 1991 federal and state individual income tax liabilities were $3,680,038.00 and $639,826.00, respectively. Evelyn's estate did not contest either of those adjustments.

4

the position that post-death events may not be considered in determining the amount of its deduction for Evelyn's individual income tax liabilities because those liabilities were valid and enforceable claims against the estate at the time of Evelyn's death. Unable to resolve their differences, the parties submitted the case to the tax court on a fully stipulated basis.

The tax court held that the estate's deduction for Evelyn's 1991 federal income tax liability must be reduced by the amount actually refunded in 1997. According to the tax court, it was proper for the Commissioner to consider events occurring after Evelyn's death in calculating this deduction because the estate challenged Evelyn's individual income tax liability through her amended return. The tax court also held that the estate's deduction for Evelyn's 1991 Colorado income tax liability should be reduced to reflect the proper amount of tax after being adjusted downward as a result of her decreased federal taxable income. Although the record revealed that Evelyn's estate had not filed an amended Colorado income tax return and Evelyn had not received a refund of any 1991 state income taxes, the tax court reasoned that nothing prevented the estate from seeking such a refund on Evelyn's behalf. The tax court determined there was an estate tax deficiency of $1,581,593.00 based on the amounts set forth in (1) the original notice of deficiency, and (2) the increased deficiency arising from disallowance of the estate deductions for Evelyn's 1991 individual income tax

liabilities.  The estate appeals the latter deficiency determination.

## II.

We review decisions of the tax court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury."  26 U.S.C. § 7482(a)(1).  Because this case was submitted to the tax court on a fully stipulated basis, we review the purely legal question presented by this appeal de novo.  See Duke Energy Natural Gas Corp. v. Comm'r, 172 F.3d 1255, 1258 (10th Cir. 1999).

## III.

Section 2053(a)(3) of the Internal Revenue Code authorizes a deduction for "claims against the estate" in calculating the value of a decedent's taxable estate.[4]

---

[4] In its entirety, section 2053(a) provides:

General rule. -- For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts --
(1) for funeral expenses,
(2) for administration expenses,
(3) for claims against the estate, and
(4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,
as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

26 U.S.C. § 2053(a).

There is no dispute in this case that unpaid income taxes incurred by a decedent prior to death may be deducted as a claim against the estate. See Treas. Reg. § 20.2053-6(f). Rather, the disagreement centers on whether events occurring after a decedent's death may be considered in calculating that deduction. In particular, the parties debate the effect of the 1996 settlement between Donn's estate and the Commissioner on the value of the section 2053(a)(3) deduction taken by Evelyn's estate for her 1991 income taxes. The estate argues the settlement is not relevant because the value of its deduction should be determined as of Evelyn's death. The Commissioner counters that the settlement was properly considered because the deduction is limited to the actual amount of taxes Evelyn ultimately owed.

This is an issue of first impression in our circuit, notwithstanding the Commissioner's assertion to the contrary. Specifically, he observes that the Eighth Circuit resolved this issue in his favor in Jacobs v. Commissioner, 34 F.2d 233 (8th Cir. 1929), shortly after Congress divided the former Eighth Circuit into the new Tenth and Eighth Circuits.[5] He argues that "under the statute that created the Tenth Circuit, Jacobs is a decision of the former Eighth Circuit and, thus, should be treated as binding precedent here." Appellee's Br. at 30. There are two

_____

[5] See Act of Feb. 28, 1929, ch. 363, 45 Stat. 1346.

7

fundamental problems with the Commissioner's argument.[6]

First, unlike the Eleventh Circuit, which chose to adopt all decisions issued by the former Fifth Circuit before its October 1, 1981, split as binding precedent, see Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we have never held that the decisions of our predecessor circuit are controlling in this court.[7] Second, even assuming we are bound by the decisions of the former Eighth Circuit, Jacobs does not fall within that category of cases. As the

_____

[6] The Estate argues we should not even address this argument because the Commissioner did not present it to the tax court. As a general rule, we will not consider an issue that was not raised below. See F.D.I.C. v. Noel, 177 F.3d 911, 915 (10th Cir. 1999), cert. denied, 528 U.S. 1116 (2000). We have relaxed this rule, however, where the argument presents an alternative ground for affirming a lower court ruling on a pure question of law. See Stahmann Farms, Inc. v. United States, 624 F.2d 958, 961 (10th Cir. 1980) (considering for first time on appeal the Commissioner's alternative theory for affirming a district court ruling adverse to taxpayer). Though we admonish all litigants, including the Commissioner, to "give it everything they've got" in the lower courts, Tele-Communications, Inc. v. Comm'r, 104 F.3d 1229, 1233 (10th Cir. 1997), we will consider his new legal theory raised for the first time on appeal in support of the tax court's ruling.

[7] Following the split, two district courts in our circuit concluded they were bound by the decisions of the former Eighth Circuit. See Thompson v. St. Louis-San Francisco Ry. Co., 5 F. Supp. 785, 789 (N.D. Okla. 1934); In re Meyers, 1 F. Supp. 673, 674 (W.D. Okla. 1932), rev'd on other grounds sub nom., Barbee v. Spurrier Lumber Co., 64 F.2d 5 (10th Cir. 1933). We seemed to reach a similar conclusion in Boynton v. Moffat Tunnel Improvement Dist., 57 F.2d 772, 781 (10th Cir. 1932), where we discussed a former Eighth Circuit case in support of our holding and stated that "the decisions cited from the Supreme Court of the United States, from the Eighth Circuit Court of Appeals, and from this court, are binding upon us." However, we also relied on similar decisions by the Supreme Court and our own circuit and could have reached the same holding without reference to the Eighth Circuit case.

8

Commissioner concedes, the Eighth Circuit decided <u>Jacobs</u> almost four months *after* the Act creating our circuit took effect. Moreover, we are not persuaded by the Commissioner's argument that section 5(1) of that Act obligates us to treat the Eighth Circuit's post-split decision in <u>Jacobs</u> as a decision of the former Eighth Circuit simply because that case was argued and submitted prior to the effective date of the Act.[8] That section states: "If any hearing before [the former Eighth Circuit] has been held in the case, or if the case has been submitted for decision, then further proceedings in respect of the case shall be had in the same manner and with the same effect as if this Act had not been enacted." 45 Stat. at 1348.

Notably, the Act creating the Eleventh Circuit contains nearly identical language, <u>see</u> <u>Bonner</u>, 661 F.2d at 1207-08, yet that circuit has never adopted the per se rule urged by the Commissioner in this case. The Eleventh Circuit has instead held that where an appeal was submitted before the split but decided by the Fifth Circuit thereafter, the decision has precedential effect only if the appeal arose in the geographical confines of the Eleventh Circuit. <u>See</u> <u>Stein v. Reynolds</u>

---

[8] The <u>Jacobs</u> case was argued and submitted for decision on December 20, 1928. <u>See</u> certified copy of docket sheet in <u>Jacobs v. Commissioner</u>, No. 8249 (8th Cir.), attached to appellee's brief. We take judicial notice of this court record. <u>See</u> <u>Magnum Foods, Inc. v. Continental Cas. Co.</u>, 36 F.3d 1491, 1502 n.12 (10th Cir. 1994) ("this court may appropriately take judicial notice of developments that are a matter of public record and are relevant to the appeal").

Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982).[9]  But as the estate points out in this case, Jacobs arose in Missouri, which has always been in the Eighth Circuit.  The Commissioner offers no reason why an Eighth Circuit case decided after the split and arising outside the geographical confines of our circuit should be binding on this court, and we decline to announce such a rule here.

Because we are not bound by Jacobs in deciding whether post-death events may be considered in valuing a deduction under section 2053(a)(3), we may answer this question on a clean slate.  Neither section 2053(a)(3) nor the tax regulations clearly indicate whether events that occur after a decedent's death are relevant in calculating a deduction for a claim against the estate.  The statute is silent on this issue.  The regulations, on the other hand, contain language which arguably supports the positions of both parties.  For instance, one regulation cited by the estate provides:  "The amounts that may be deducted as claims against a decedent's estate are such only as represent personal obligations of the decedent existing at the time of his death."  Treas. Reg. § 20.2053-4.  But, another

---

[9] Prior to its division, the former Fifth Circuit created two panels:  Unit A, which would comprise the new Fifth Circuit (Texas, Louisiana and Mississippi), and Unit B, which would become the new Eleventh Circuit (Georgia, Florida and Alabama).  See Theodore H. Davis, Jr.,  Likelihood of Confusion Determinations: a Survey of Eleventh Circuit Jurisprudence  , 2 J. Intell. Prop. L. 57, 62 n.6 (1994).
Thus, the  Stein  court refers to the Unit A panel and the Unit B panel of the former Fifth Circuit in its decision.  See 667 F.2d at 34.

10

regulation relied upon by the Commissioner permits estates to deduct a decedent's tax liabilities as a claim against the estate even if the exact amount is not known, as long as the deduction "is ascertainable with reasonable certainty, and will be paid." Treas. Reg. § 20.2053-1(b)(3). In light of these apparent inconsistencies, the most we can discern "from these Regulations is that the situation we now face is not expressly contemplated." Estate of Smith v. Comm'r, 198 F.3d 515, 521 (5th Cir. 1999).

We therefore begin our analysis with the leading case on this issue, Ithaca Trust Co. v. United States, 279 U.S. 151 (1929). In Ithaca Trust, the decedent left the residue of his estate to his wife for life, with the remainder to certain charities. To ascertain the amount of the charitable deduction for estate tax purposes, the wife's residual was calculated with a mortality table and subtracted from the principal of the estate. However, the wife died much sooner than expected. The question for the Court was whether the value of the estate's deduction should be calculated according to the wife's life expectancy as of the date of the testator's death or by applying the wife's actual date of death. In a unanimous opinion, the Court adopted a date-of-death valuation rule: "The estate so far as may be is settled as of the date of the testator's death." Id. at 155. The Court acknowledged that "[t]he first impression is that it is absurd to resort to statistical probabilities when you know the fact," but it stated that "the value of

11

the thing to be taxed must be estimated as of the time when the act is done," i.e., the passing of the decedent's estate at death. Id. The Court therefore concluded by stating that, as "[t]empting as it is to correct uncertain probabilities by the now certain fact, we are of opinion that it cannot be done." Id.

Several courts have relied on the date-of-death valuation rule announced in Ithaca Trust to hold that events occurring after a decedent's death are irrelevant in valuing an estate's deduction under section 2053(a)(3). See Estate of Smith, 198 F.3d at 520-26 (allowing estate to deduct date-of-death value of claim against it even though estate later settled for lesser amount); Propstra v. United States, 680 F.2d 1248, 1253-56 (9th Cir. 1982) (same); Estate of Van Horne v. Comm'r, 78 T.C. 728, 732-39 (1982) (same), aff'd, 720 F.2d 1114 (9th Cir. 1983); Greene v. United States, 447 F. Supp. 885, 892-95 (N.D. Ill. 1978) (declining to consider creditor's failure to comply with statute of limitations for filing claim after decedent's death in allowing estate's deduction for claim); Russell v. United States, 260 F. Supp. 493, 499-500 (N.D. Ill. 1966) (same); Winer v. United States, 153 F. Supp. 941, 943-44 (S.D.N.Y. 1957) (same).[10] While most of these courts acknowledged that Ithaca Trust involved a different section of the federal estate tax statute, i.e., charitable bequest deductions under the precursor to 26 U.S.C. §

---

[10] In Commissioner v. Strauss, 77 F.2d 401 (7th Cir. 1935), vacated by stipulation, 81 F.2d 1016 (7th Cir. 1936), the Seventh Circuit disregarded post-death events without mentioning Ithaca Trust.

12

2055, they interpreted the opinion as announcing a broad principle that the value of a taxable estate should be determined as closely as possible to the date of the decedent's death.

Other courts, however, have refused to extend the principle of Ithaca Trust beyond charitable bequest deductions, holding that postmortem events may properly be considered in calculating the value of a claim against the estate deduction. See Estate of Sachs v. Comm'r, 856 F.2d 1158, 1160-63 (8th Cir. 1988) (holding that Commissioner could rely on retroactive tax forgiveness legislation enacted four years after decedent's death in disallowing estate deduction for paying those taxes); Comm'r v. Estate of Shively, 276 F.2d 372, 373-75 (2d Cir. 1960) (holding that decedent's estate could not deduct full date-of-death value of spousal support obligations because ex-wife re-married before estate filed return); Jacobs, 34 F.2d at 235-36 (holding that husband's estate could not deduct amount of claim against it arising from antenuptial agreement as a result of wife's waiver of claim after husband's death); Estate of Kyle v. Comm'r, 94 T.C. 829, 848-51 (1990) (disallowing estate's deduction for date-of-death value of litigation claim against it because case was resolved in estate's favor six years after decedent's death); Estate of Hagmann v. Comm'r, 60 T.C. 465, 466-69 (1973) (refusing to allow estate to deduct valid claims against it because creditors never filed those claims after decedent's death), aff'd per curiam, 492 F.2d 796

(5th Cir. 1974).[11]  Although these courts have offered a variety of reasons why Ithaca Trust should be limited to charitable bequests, three recurring themes emerge.

One explanation for not extending Ithaca Trust to claims against the estate is that the congressional purpose underlying that deduction is different from that of deductions for charitable bequests.  According to this rationale, the date-of-death valuation rule does not apply to section 2053(a)(3) because the purpose of that deduction is to appraise the decedent's actual net worth at death, while the purpose of section 2055 is to encourage charitable bequests by ensuring that if a testator makes a charitable gift in a prescribed form, a deduction will be allowed in a specified amount.  See, e.g., Sachs, 856 F.2d at 1162 ("there is no legislative interest behind the § 2053(a)(3) deduction in encouraging claims against the estate in the same way that date-of-death valuation encourages charitable bequests").

Another justification for not applying Ithaca Trust to section 2053(a)(3) is based on the other deductions in the section.  This approach places heavy reliance on the fact that section 2053(a) allows a deduction not only for claims against the estate but also for funeral and estate administration expenses.  Under this view,

---

[11] In Commissioner v. State Street Trust Co., 128 F.2d 618 (1st Cir. 1942), the First Circuit considered post-death events without discussing Ithaca Trust.

14

since these expenses are calculated after death, Congress must also have intended that claims against the estate be ascertained by post-mortem events. See, e.g., Jacobs, 34 F.2d at 236 ("funeral expenses, administration expenses, and claims against the estate, under this paragraph, were intended by Congress to be determined in the course of an orderly administration of the estate").

The third reason these courts reject a date-of-death valuation approach is they do not consider it sensible to allow an estate to deduct a claim it does not ultimately owe or pay. See, e.g., Shively, 276 F.2d at 375 ("To permit an estate such a deduction under these circumstances would be to prefer fiction to reality and would defeat the clear purpose of [the precursor to section 2053(a)(3)].").

We do not find any of these explanations particularly persuasive. Even assuming Congress had different motives for allowing deductions under section 2053 than it did for deductions under section 2055, this distinction "fails to explain why deductions for claims against the estate should be computed [any] differently from charitable bequests." Propstra, 680 F.2d at 1255 n.11. Further, we find it insignificant that Congress placed funeral and estate administration expenses, which are calculated after death, with claims against the estate in section 2053(a), because that section also contains a deduction for unpaid mortgages, which may be calculated without reference to post-death events. Finally, we note that the emphasis on actuality in valuing claims against the estate

is at odds with the Supreme Court's admonition that as "[t]empting as it is to correct uncertain probabilities by the now certain fact, we are of opinion that it cannot be done." Ithaca Trust, 279 U.S. at 155. Thus, instead of facing compelling arguments why we should reject date-of-death valuation for claims against the estate, we are left with ambiguous interpretations of the appropriate method for calculating section 2053(a)(3) deductions.

These ambiguities, of course, do not automatically lead to the conclusion that events occurring after a decedent's death may never be considered in valuing a claim against the estate. But neither do they provide us license to ignore the Supreme Court's pronouncement that "[t]he estate so far as may be is settled as of the date of the testator's death." Ithaca Trust, 279 U.S. at 155. We therefore agree with the Fifth Circuit that a "narrow reading of Ithaca Trust, a reading that limits its application to charitable bequests, is unwarranted." Smith, 198 F.3d at 524. Accordingly, we hold that the date-of-death valuation rule announced in Ithaca Trust applies to a deduction for a claim against the estate under section 2053(a)(3). As a result, in this circuit, events which occur after the decedent's death may not be considered in valuing that deduction.

Sound policy reasons support our adoption of the date-of-death valuation principle for section 2053(a)(3) deductions. Specifically, this principle provides a bright line rule which alleviates the uncertainty and delay in estate administration

16

which may result if events occurring months or even years after a decedent's death could be considered in valuing a claim against the estate. See Appellant's Opening Br. at 22 ("This uncertainty would make estate administrators -- who are personally liable for the estate tax -- more reluctant to satisfy estate obligations and distribute estate assets."); Robert C. Jones, Note, Estate and Income Tax: Claims Against the Estate and Events Subsequent to Date of Death, 22 U.C.L.A. L. Rev. 654, 680 (1975) ("A large part of the delay involved in the probate of estates is attributable to a final determination of tax liabilities. . . . [A]llowing postmortem events occurring during the administration of the estate to govern, contributes to probate delay."). Our holding resolves these problems by bringing more certainty to estate administration, an ideal which has long been promoted by judge and commentator alike. See Shively, 276 F.2d at 376 (Moore, J., dissenting) ("In the field of estate tax law it is particularly important that there be as much certainty as possible."); Jones, Estate and Income Tax, supra, at 681 ("the current approach to timing the valuation of claims must be made more certain and consistent").

Although our holding ultimately benefits the estate in this case, application of the rule we announce today just as easily can favor the Commissioner. As one commentator has observed, when it serves his interests the Commissioner "has not been loathe to employ the principle that deductible claims against the estate

17

become fixed at death." Craig S. Palmquist, <u>The Estate Tax Deductibility of Unenforced Claims Against a Decedent's Estate</u>, 11 Gonz. L. Rev. 707, 712 (1976). For example, in <u>Estate of Lester v. Commissioner</u>, 57 T.C. 503 (1972), the estate was obligated by a divorce decree to pay $1,000.00 per month to the decedent's ex-wife. The estate made twenty-four payments and then settled with the ex-wife by purchasing an annuity policy for her benefit for $78,700.00. The estate argued it was entitled to deduct at least $102,700.00, the total of its payments and the annuity policy, as a claim against the estate. Invoking <u>Ithaca Trust</u>, the Commissioner insisted the deduction was limited to $92,456.16, the actuarial value of the ex-wife's life expectancy as of the decedent's death. The tax court agreed with this position:

> We think there is no reason in this case to go beyond the principle of <u>Ithaca Trust Co. v. United States</u>, <u>supra</u> -- that the value of the judgment in the divorce proceedings is to be determined as of the date of the husband's death by the use of the tables employed here by the Commissioner, which take into consideration the contingency of the wife's death prior to final payment of the installments to become due.
> There is no need to go into the effect of events subsequent to the husband's death, <u>i.e.</u>, how the estate finally freed itself of a continuing and admitted liability.

<u>Id.</u> at 507. Thus, as the facts of <u>Lester</u> demonstrate, whether our holding benefits the government or the taxpayer depends on the particular circumstances of each case.

In this case, the tax court concluded it was appropriate to consider post-

18

mortem events because the estate later sought a refund of Evelyn's 1991 federal income tax and could have done the same with regard to her state income tax. Emphasizing that "a claim that is valid and enforceable at the date of a decedent's death must remain enforceable in order for the estate to deduct the claim," McMorris v. Commissioner, 77 T.C.M. (CCH) 1552, 1554 (1999), the tax court reasoned that once the estate challenged Evelyn's tax liabilities, they were "no longer a valid and enforceable claim against the estate," id. at 1555. As support, the tax court cited its prior holding in Estate of Smith v. Commissioner, 108 T.C. 412 (1997), rev'd and vacated, Smith, 198 F.3d 515, which distinguished cases involving the *valuation* of claims that are certain and enforceable on the date of a decedent's death from cases where the *enforceability* of the claims were unknown at death because they were disputed or contingent. Under this approach, the former claims are calculated as of the date of death, while the latter claims are calculated by considering post-death events. See id. at 419.

In examining the "enforceable" nature of the estate's claims in this case, the tax court did not have the benefit of the Fifth Circuit's subsequent decision in Smith, which concluded that "this dichotomy, which distinguishes between enforceability on the one hand and valuation on the other, . . . is not a sound basis for distinguishing claims in this context." 198 F.3d at 525. As the Fifth Circuit explained:

19

> There is only a semantic difference between a claim that may prove to be invalid and a valid claim that may prove to have a value of zero. For example, if given the choice between being the obligor of (1) a claim known to be worth $1 million with a 50 percent chance of being adjudged unenforceable, or (2) a claim known to be enforceable with a value equally likely to be $1 million or zero, a rational person would discern no difference in choosing between the claims, as both have an expected value $500,000.

Id. Because the tax court in Smith improperly relied on the "contingent" nature of the estate's claim to consider post-death events, the Fifth Circuit remanded the case with instructions that the tax court "neither . . . admit nor consider evidence of post-death occurrences when determining the date-of-death value of [the] claim." Id. at 526.

In this case, instead of focusing on whether the estate's section 2053(a)(3) deduction for Evelyn's income tax liabilities "remained enforceable" for an infinite period of time, the tax court should have examined whether the estate properly calculated that deduction as of the date of Evelyn's death. Had the tax court done so, it would have recognized that the increased deficiency at issue in this appeal was not premised on a date-of-death miscalculation. The increased deficiency was based solely on the fact that the federal and state income taxes incurred by Evelyn in 1991 became subject to a refund as a result of a settlement between another estate and the Commissioner in 1996. Therefore, the tax court erred when it considered that settlement in calculating the total tax deficiency for Evelyn's estate.

20

IV.

We REVERSE the tax court's ruling that events occurring after death may be considered in valuing a claim against the estate deduction. We REMAND to the tax court with directions to VACATE the determination of the estate tax deficiency at issue and to recalculate any remaining unrelated deficiencies owing.